54 N.J. Super. 347 (1959)
148 A.2d 837
H. & H. RANCH HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
FRANK H. SMITH AND ANN SMITH, OWNERS, DEFENDANTS-RESPONDENTS, AND CHARLES W. SYMANSKI, ET AL., DEFENDANTS; MICHAEL J. DWYER, ATTORNEY AND APPELLANT PRO SE.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1959.
Decided March 10, 1959.
*350 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Michael J. Dwyer argued the cause for appellant, Mr. Michael J. Dwyer, pro se.
Mr. Daniel Gilady argued the cause for respondents (Messrs. Towe & Gilady, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Michael J. Dwyer appeals from a denial by the Superior Court of his application to impress an attorney's lien under N.J.S. 2A:13-5 upon a judgment recovered by Frank H. Smith and his wife Ann Smith.
The matter comes before this court upon a statement of proceedings under R.R. 1:6-3, which discloses:
On or about March 14, 1957 Frank H. Smith engaged Dwyer to represent him and his wife Ann, and Philip L. Sabatie, all of whom were defendants in an action instituted by H. & H. Ranch Homes, Inc. (Ranch Homes) in the Law Division of the Superior Court. Dwyer was authorized to file an answer and counterclaim on behalf of Smith and his wife and to file an answer on behalf of Sabatie. Dwyer filed these pleadings and performed numerous other services in the protection and prosecution of his clients' rights in the matter. On October 14, 1957 Smith notified Dwyer that he, on and after October 15, 1957, would not be responsible for any fees associated with a defense on behalf of Sabatie.
All of the parties and their respective counsel appeared in court on October 23, 1957, the day upon which trial was scheduled. The case was not reached for trial that day and was re-scheduled to be tried on October 30, 1957. Thereafter the parties, plaintiff and defendants, agreed to meet at Smith's home on October 26, 1957 in order that various stipulations could be made. On October 26, 1957 Smith advised Dwyer by telephone that he would not allow the scheduled meeting to be held. Dwyer thereafter informed Smith that it would be better that he, Dwyer, be relieved *351 from further participation in the case. Dwyer thereupon transmitted to Smith a substitution of attorney drawn in blank and dated October 25, 1957, together with Dwyer's entire related file. No bill or statement of fees was then delivered to Smith, but Smith was informed by Dwyer that his bill would be reasonable and nominal. Some time thereafter Smith retained Towe & Gilady, Esqs. as his counsel.
On October 28, 1957 Dwyer mailed a bill to Smith for legal services in the sum of $475. There ensued some correspondence concerning Dwyer's bill. On December 13, 1957 Dwyer advised Daniel Gilady, Esq., by letter, that he had an attorney's lien in the amount of $475 on any judgment which might be obtained in the action. The trial lasted 16 days and resulted in a judgment for Smith and his wife on their counterclaim in the sum of $1,725.61. Some correspondence transpired between Dwyer and Gilady concerning the manner and method of determining whether Dwyer was entitled to an attorney's lien. Gilady suggested that Dwyer file a petition in the main cause. Thereafter Dwyer served both Gilady, as attorney for the Smiths, and the attorney for Ranch Homes, with a notice of his intention to move before the trial court "for an order awarding counsel fees and disbursements." The trial judge heard the matter in a summary fashion and on September 27, 1958 filed an order dismissing Dwyer's motion on the ground that the court was "without jurisdiction to enter an order enforcing any statutory lien under R.R. 2A:13-5."
The issues before this court are (1) whether Dwyer has an attorney's lien by virtue of N.J.S. 2A:13-5, and (2) the method and mechanics of impressing such a lien upon Smith's judgment.
Smith argues that "in the light of the fact that Dwyer consented to a substitution of counsel and surrendered Smith's papers and documents prior to trial and final judgment, that he lost the lien for services above provided."
Under the common law there existed two basic types of liens for the benefit of attorneys, (1) a retaining lien, and (2) a charging lien. The former consisted of *352 a right in the attorney to retain in his possession all papers and items of value belonging to his client which came into his possession, until he was paid. An attorney lost this lien upon delivery of those items. Delaney v. Husband, 64 N.J.L. 275 (E. & A. 1900); Norrell v. Chasan, 125 N.J. Eq. 230 (E. & A. 1939); Visconti v. M.E.M. Machinery Corp., 7 N.J. Super. 271 (App. Div. 1950), certification denied 5 N.J. 347 (1950). Upon Dwyer's voluntary delivery of the papers to Smith the retaining lien expired.
The common-law charging lien was enlarged by N.J.S. 2A:13-5, which provides, as far as here pertinent:
"After the filing of a * * * counterclaim * * * the attorney or counsellor at law, who shall appear in the cause for the party * * * maintaining the * * * counterclaim * * * shall have a lien for compensation, upon his client's * * * counterclaim * * * which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien."
An examination of the statute discloses that a lien arises upon the filing of the counterclaim by an attorney and attaches to such counterclaim. The further provision that the lien should attach to a judgment exhibits an intention to continue the effect thereof even though the claim merges in a judgment. It is not a requisite to the continuance of a lien for an attorney filing a counterclaim that he actually conduct the trial. This conclusion is strengthened by the further statutory provision that a lien shall not be affected by any settlement between the parties even before judgment. Dwyer's voluntary delivery of the papers and consensual substitution of counsel did not terminate his lien. The lien continued and attached to the judgment even though the trial was conducted by substituted counsel. *353 Cf. American Automobile Ins. Co. v. Niebuhr, 124 N.J. Eq. 372 (Ch. 1938).
On the question of procedure it is to be noted that the cited statute provides that the court in which the primary action or proceeding is pending upon which an attorney or counsellor at law claims a lien may, upon his petition, determine and enforce the lien.
It must be recognized that since September 1948 the use of petitions is deprecated except where specific provision is made therefor in the rules, R.R. 4:7-2; 2 Waltzinger, New Jersey Practice 92, author's comment on R.R. 4:7-2; 2 Schnitzer & Wildstein, New Jersey Rules Service, A IV-127, or by statute. Dwyer's dilemma in determining the proper procedure is understandable in the light of that fact and the further fact that neither the cited statute nor the revised rules have made specific provision for the procedure here to be followed.
Artale v. Columbia Insurance Co., 109 N.J.L. 463 (E. & A. 1932), in an admitted obiter, set forth the procedure for the determination and enforcement of an attorney's lien ante 1948. The mechanics there set forth have since been recognized as the proper procedure.
For the guidance of counsel in connection with future applications, consistent with the spirit of our present rules of practice, we suggest that, where the determination or enforcement of an attorney's lien is sought, the following procedure, patterned on Artale, be employed: The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with *354 a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor has been made, R.R. 4:39-1 et seq., or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.
In the instant case the court had jurisdiction and should have determined the merits of the claim asserted for attorney's lien. We express no opinion on the question as to whether Dwyer's claim was still valid or subsisting, or concerning its value as of the time of his application for fixing the lien. These are matters for the trial court.
Reversed and remanded to the trial court with the direction to proceed de novo in the manner above outlined.