281 N.J. Super. 73 (1995)
656 A.2d 846
PETRA MATEO, PLAINTIFF-APPELLANT,
v.
MANOLIN MATEO, GRACE R. GARRETT AND ERNEST GARRETT, DEFENDANTS, AND DARRELL FINEMAN, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1995.
Decided April 20, 1995.
*74 Before Judges BRODY, LONG and A.M. STEIN.
Petra Mateo, appellant, filed a pro se brief.
Capizola, Fineman & Lapham, attorneys for respondent (Barbara R. Lapham, on the brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
The dispute in this appeal is between plaintiff and Darrell Fineman, Esq., the attorney who represented her when she commenced this personal-injury automobile negligence action. Plaintiff appeals from an order restraining her from continuing a proceeding she had commenced against Fineman in the Fee Arbitration Committee pursuant to R. 1:20A-3. The trial judge based his order on plaintiff's failure to appeal to this court from a provision of an earlier order that fixed Fineman's fee even though, contrary to R. 1:20A-6, Fineman had failed to advise plaintiff of her right to submit the dispute to the Fee Committee. The earlier order also relieved Fineman from representing plaintiff *75 and established an attorney's lien for the fee. We reverse the restraining order because of Fineman's violation of the Rule.
Plaintiff was a passenger in an automobile operated by her husband, defendant Manolin Mateo. When her husband suddenly stopped the vehicle, it was struck from behind by an automobile owned by defendant Ernest Garrett and operated by defendant Grace Garrett. Plaintiff was seriously injured by the impact. The Mateos' automobile policy provided defendant Manolin Mateo $100,000 liability coverage for the accident. The Garretts were essentially judgment proof; their automobile policy provided only $15,000 liability coverage for the accident.
We are told that plaintiff engaged Fineman to represent her for a contingent fee.[1] He then commenced two actions in 1988 on her behalf. One was the present action against the two drivers and the owner of the Garrett vehicle. The Garretts' insurer deposited in court the full amount of its coverage as an offer of settlement. Any additional recovery depended on whether defendant Manolin Mateo would be found negligent for stopping suddenly.
Fineman brought the other action against the Automobile Full Insurance Underwriting Association (JUA), its servicing carrier, and the carrier's agent through whom the Mateos purchased their policy. Plaintiff claimed in that action that the agent negligently failed to write the policy with more than $15,000 under-insured motorist coverage. In a separate count, plaintiff claimed that she was entitled to greater personal injury protection (PIP) payments for essential services than the JUA was willing to pay.
It appears from the sketchy record presented to us, that plaintiff refused to settle the actions for less than $100,000, a sum far in excess of what Fineman thought her case was worth.[2]
*76 In 1989 Fineman moved in both cases "for an Order relieving Darrell Fineman, Esq. and [his firm] as attorneys for Petra Mateo and impressing a lien for attorney's fees in the amount deposited with the Court in the matter of Mateo v. Garrett." Fineman supported the motions with his certification in which he stated the reasons for asking to be relieved as counsel.
As to the claim against the insurance agent, he stated that he had a conflict of interest. The agent had filed for bankruptcy and Fineman represented another client who had a claim against the same agent. Fineman claimed that the two clients would be competing for the agent's limited assets. As to the claim for additional PIP benefits, he stated that he needed the testimony of a medical doctor to prove that plaintiff was entitled to the additional benefits she claimed, but plaintiff ignored his demand for "a $1,500 retainer so that I could pay for the doctor's testimony at trial."
As to the present negligence action, he stated only:
This case is further complicated by the fact that Mrs. Mateo was rear-ended, and the $15,000 policy of the rear-ending defendant, Garrett, was placed in Court. Her husband, who was the driver, may or may not have liability.
We assume the foregoing was meant to suggest that plaintiff was being unreasonable in not settling the entire case for $15,000.
Attached to Fineman's certification was a copy of two computer-generated bills that he addressed to plaintiff. One refers to the present action and contains an itemization of time for legal services at hourly rates that total $3,085 attorney's fees, an itemization of "expenditures" of $1,274.27, and unitemized "miscellaneous charges" for "telephone calls, photocopies, postage and travel" of $154.25. The total claimed for this action was $4,513.52. The other bill refers to the insurance action and contains an itemization *77 of time for legal services at hourly rates that total $2,525.50 attorney's fees, fax charges of $2.00 and unitemized "miscellaneous charges" for "telephone calls, photocopies, postage and travel" of $126.28. The total claimed for the insurance action was $2,653.78.
We gather that plaintiff did not appear on the return day of the motions and did not submit any material to the court. The judge granted both motions. The orders relieved Fineman as counsel in both cases and awarded fees and expenditures in the amount he had requested. The order entered in the present action provides in part:
IT IS FURTHER ORDERED that a lien is hereby impressed for attorney's fees of $4,513.52 in the amount deposited with the Court in the within matter.
The order entered in the insurance action provides in part:
IT IS FURTHER ORDERED that a lien is hereby impressed for attorney's fees of $2,653.78 in the amount deposited with the Court in the matter of Mateo v. Garrett.

Stanley Drinkwater, Esq., represented plaintiff at the trial of this action three years later, which resulted in a judgment against Manolin Mateo and Grace Garrett in the amount of $119,041. After the matter was settled for $88,000, plaintiff refused to sign the settlement check because she challenged the amount of Fineman's fee. In an effort to settle that dispute, a draft agreement, which plaintiff also refused to sign, was prepared in June 1993 that contains the following provision:
The parties to this Agreement also acknowledge that the plaintiff Petra Mateo has previously refused to sign the settlement check as she was desirous of disputing the fee amount to [Fineman's law firm] and having a determination as to the fee made by the fee arbitration process. The [said law firm] and the plaintiff Petra Mateo have arrived at a compromised settlement of this fee dispute. The [said] law firm .. . agrees to accept the sum of $5,000 as settlement of all claims arising from their motion originally returnable on June 11, 1993. Such settlement shall be paid from the proceeds of the third party settlement currently being handled by Stanley Drinkwater, Esquire. Petra Mateo agrees to pay this sum to her prior law firm and agrees that she will not further dispute the payment of this amount and specifically will not submit a claim to fee arbitration.
Fineman had made the motion referred to in the draft "for an Order directing plaintiff to pay the attorney's lien entered in favor *78 of [Fineman's law firm] out of the settlement proceeds of this action pursuant to prior Court order."
After plaintiff persisted in refusing to endorse the settlement check and insisted on submitting the dispute to the Fee Committee, Fineman pressed his motion. As a result, he obtained an order dated November 15, 1993, appointing a third party as plaintiff's attorney-in-fact with authority to endorse the settlement check. Meanwhile, plaintiff filed a request for fee arbitration with the Fee Committee.[3] Fineman then moved for an order restraining further proceedings in the Fee Committee. The order granting that motion, the order appealed from, was entered January 21, 1994. Thereafter, plaintiff's trial attorney sent Fineman a check for his fees, as previously awarded by the 1989 orders, in the total amount of $7,167.30.
In 1989, R. 1:20A-6 prohibited an attorney from filing an action to recover a fee until after giving Pre-Action Notice to the client.[4] *79 Such notice advises the client of the right to have a fee dispute submitted to the Fee Committee for adjudication. The Rule also provided that the "attorney's complaint shall allege the giving of the notice required by this rule." The current Rule additionally provides that if the attorney's complaint fails to allege giving such notice "it shall be dismissed."
Fineman did not file a complaint demanding payment of an attorney's fee. Rather, in 1989 he simply moved in the present action for an attorney's lien pursuant to N.J.S.A. 2A:13-5. That was not the proper way to establish an attorney's lien. Such a proceeding must be brought as a step in the main cause, but tried as a separate and distinct plenary action. "In no event should the matter be tried as a summary proceeding." H. & H. Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347, 354, 148 A.2d 837, (App.Div. 1959).
A separate plenary action may have more forcefully alerted plaintiff  left without an attorney because of Fineman's motion to be relieved  that Fineman was also seeking an adjudication of his fee, and not simply a lien in some unspecified amount as might appear from his notices of motion. Also, a trial, even by default, may have more forcefully alerted the judge to the complexities of establishing a fair fee under a contingent fee agreement for representing a client in litigation that is incomplete and has an uncertain future. See e.g. La Mantia v. Durst, 234 N.J. Super. 534, 561 A.2d 275 (App.Div. 1989).
Moreover, in a well-reasoned opinion, Judge Bassler held that the Pre-Action Notice requirement applies to a petition to establish an attorney's lien as well as to a complaint for attorney's *80 fees. In the absence of compliance with the Rule, such a petition must be dismissed. Rosenfeld v. Rosenfeld, 239 N.J. Super. 77, 570 A.2d 1026 (Ch.Div. 1989).
Fineman argues that despite his failure to give plaintiff the Pre-Action Notice, she lost her right to submit the dispute to the Committee because she had failed to appeal to this court from the orders granting his motions for attorney's liens. The trial judge accepted this argument as the basis for restraining the Fee Committee proceedings. We disagree.
An action for attorney's fees must be dismissed where the attorney does not allege that he or she gave the client notice of the availability of the Fee Arbitration Committee proceedings. In the absence of consent by the client, failure to dismiss invalidates the action, and any judgment obtained in such a proceeding is void. Dismissal is now an express requirement of R. 1:20A-6, but it has always been a requirement of sound policy in regulating the practice of law. There is no sense in requiring an attorney to inform a client that litigation over a fee dispute may be avoided by bringing the matter before the Fee Committee, yet binding the client to a judgment in such litigation where the attorney failed to give the required notice.
The order restraining the Fee Arbitration Committee proceedings is reversed and the matter is referred to the Committee to resume its proceedings.
NOTES
[1] We have not been provided with a copy of the contingent fee agreement.
[2] Different counsel represented plaintiff when the present case was later tried in 1992. A jury then found defendant Manolin Mateo 5% negligent and defendant Grace Garrett 95% negligent. It awarded plaintiff $88,000 damages. Judgment was accordingly entered against both defendants "jointly and severally" in the amount of $119,041, which included prejudgment interest. We are told that plaintiff "settled" the judgment for $88,000. We have not been told why plaintiff "settled" for that sum, nor have we been told the outcome of plaintiff's insurance action.
[3] The request for fee arbitration as reproduced in Fineman's appendix appears to be dated merely "November." Fineman states in his brief that the request was made "on or about November 17, 1993." Plaintiff states in her brief that she had been trying during the summer of 1993 to have her lawyer file the request on her behalf.
[4] R. 1:20A-6 in 1989 provided:

Prior to institution of an action to recover a fee, an attorney shall notice his client of the client's option to pursue the fee arbitration remedy as provided for by these rules. If the client does not elect to pursue the fee arbitration remedy, the attorney's complaint shall allege the giving of the notice required by this rule.
R. 1:20A-6 now provides:
No lawsuit to recover a fee may be filed until the expiration of the 21 day period herein giving Pre-Action Notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. Pre-Action Notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client, or, alternatively, hand delivered to the client, and which shall contain the name, address and telephone number of the current Secretary of the Fee Committee in the district where the lawyer practices. If unknown, the appropriate Fee Secretary listed in the most current New Jersey Lawyers Diary and Manual shall be sufficient. The notice shall specifically advise the client of the right to request fee arbitration and the fact that, if the client does not promptly communicate with the Fee Secretary and file the approved form of request for fee arbitration within 21 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.