**HOFFMAN & SCHREIBER, Appellant,**

v.

**Georgina M. MEDINA, Appellee,**

**Georgina M. Medina, Debtor.**

**No. CIV. A. 98–349(MLC).**
**Bankruptcy No. 97–36922(KCF).**

United States District Court,
D. New Jersey.

Sept. 18, 1998.

Vera Fedoroff, Atkinson & DeBartolo, Red Bank, NJ, for Appellant.

Stephen M. Goldberg, Greenbrook, NJ, for Appellee.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on appeal of the Order of the United States Bankruptcy Court for the District of New Jersey dated December 17, 1997. For the reasons expressed in this Memorandum Opinion, the Order of the bankruptcy court is affirmed.

### BACKGROUND

Georgina M. Medina ("debtor") filed a voluntary Chapter 7 Petition in the bankruptcy court on June 24, 1997. Prior to the filing of the Petition, debtor was involved in extended matrimonial litigation with her former husband in order to determine, *inter alia,* the extent of her interest in the marital home located at 124 Beachway, Keansburg, New Jersey (hereinafter "the marital home"). Debtor's former husband filed for divorce in the Superior Court of New Jersey, Family Part, in 1990. Shortly thereafter, debtor filed a "Counterclaim for a Judgment of Divorce," ("Counterclaim") through her counsel, Hoffman and Schreiber ("H & S"). H & S represented debtor in the matrimonial action at all relevant times. In connection with

its representation of debtor, H & S incurred legal fees in the amount of $44,701.00, which to date remain unpaid by debtor.

On August 13, 1993, the Superior Court of New Jersey, Family Part, issued a "Final Judgment as to Custody, Support and Equitable Distribution," ("Final Judgment"). (Designated Record on Appeal ("DRA"), Ex. B to Ex. I.) Therein the court determined the parties' respective interests in both real and personal property under principles of equitable distribution. Part VII of the Final Judgment provides the equitable distribution of the real property at issue[1] and reads in pertinent part:

> House located at 124 Beachway, Keansburg, N.J.: [Debtor] shall have the right to occupy this property with the children until [child] finishes high school or resides permanently with [husband]. During that time [debtor] shall be responsible for paying the real estate taxes [and] basic homeowner's insurance at reasonable levels to protect the parties' interests in the property.... [Husband] shall receive credit for the original purchase price of $28,000 and the amount spent for repairs in the first two years of $47,545.74 for a total credit of $75,545.74. The parties have represented an appraisal on the house showing a value of $145,000, which after allowing for the credit leaves a balance of $69,454.23. *[Debtor] shall receive one third of this balance, or $23,151.19 for her interest in the house.* Judgment is hereby entered in that amount. This sum is without interest. [Debtor's] interest shall be paid to her either at the time the house is sold or upon her surrender of the house to [husband] if he wants to buy her out, subject to the [prior] provisions. If [husband] elects to buy out [debtor's] interest, he shall pay her one-third of the amount at the time of election and the balance at the time she vacates the premises. Title shall remain solely in [husband's] name.

(*Id.*, Ex. B to Ex. I at Part VII, 7.11 & 7.13.) Accordingly, debtor claimed the $23,151.19 as an account receivable in her Petition, Sched-

ule B. Debtor later claimed that $15,000 of the $23,151.19 was exempt from the property of the estate pursuant to § 522(d)(1) of the Bankruptcy Code, as the $23,151.19 account receivable represented debtor's interest in the marital home. The trustee and H & S filed objections to debtor's exemption of said amount.

Shortly before debtor filed the instant Petition, H & S sent debtor a letter which indicated that it intended to institute a lawsuit in order to collect the outstanding amount owed to it. (*Id.*, Ex. A to Ex. L (Ltr. from B. Hoffman, Esq. to G. Medina dated 6/9/97.) After debtor filed for bankruptcy protection, H & S filed a Proof of Claim in the bankruptcy court asserting a secured claim as a statutory lienholder in the amount of $23,151.00, and asserting an unsecured claim for $21,550.00.

The trustee and H & S filed motions in the bankruptcy court objecting to the exemption claimed by debtor on the $23,151.19 account receivable which debtor claimed represented her interest in the marital home. Debtor filed a cross-motion to determine the extent and validity of the statutory lien claimed by H & S, in which the trustee joined. Debtor and the trustee argued that H & S failed to perfect its statutory attorney's lien on the $23,151.00, and that as a result, the entire amount debtor owed to H & S was in the nature of an unsecured claim.

The bankruptcy court heard oral argument on the motions on December 15, 1997. At that time, the court rendered its opinion, finding that: (1) debtor was entitled to claim an exemption under § 522(d)(1) of the Bankruptcy Code for $15,000 of the $23,151.00 listed as an account receivable, and (2) H & S's entire claim against debtor was unsecured because it failed to perfect its statutory attorney's lien under New Jersey law. This appeal followed.

### STANDARD OF REVIEW

 This Court must accept the bankruptcy court's findings of fact unless those findings are clearly erroneous. *In re Reid,*

---

1. The Court notes that at all relevant times, legal title to the marital home was held in the debtor's former husband's name only.

757 F.2d 230, 233 (10th Cir.1985). To the extent that a question presented is one of law, we must exercise plenary review. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222–23 (3d Cir.1989). Where there are mixed questions of law and fact, this Court must break down these questions and apply the appropriate standard to each component. *Id.*

## DISCUSSION

*I. Homestead Exemption under § 522(d)(1)*

▮▮▮ The trustee and H & S argued in the bankruptcy court that debtor could not claim an exemption under 11 U.S.C. § 522(d)(1) for a portion of the $23,151.00 account receivable, as debtor did not hold any interest in the marital home beyond that of a mere possessory interest under the terms of the Final Judgment. More specifically, they argued that under New Jersey law, debtor's right to remain in the marital home after the divorce is not a property interest in the home which would entitle her to claim an exemption under § 522(d)(1).

The bankruptcy court found that under 11 U.S.C. § 522(d)(1), debtor was entitled to claim as exempt $15,000 of the $23,151.00 which was listed as an account receivable in the bankruptcy Petition. (*See* Tr. of Hr'g dated 12/15/97 at 14.) Section 522(d)(1) of the Bankruptcy Code provides in relevant part: "(d) The following property may be exempted under subsection (b)(1) of this section: (1) the debtor's *aggregate interest,* not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...." 11 U.S.C. § 522(d)(1) (emphasis added).[2] The bankruptcy court found that debtor had an interest in the residence which went beyond that of mere possession. In that regard, the bankruptcy court found the language of the Final Judgment dispositive in that it stated that debtor was entitled to receive "$23,151.19 *for her interest in the house.*" (Tr. of Hr'g dated 12/15/97 at 14.)

The bankruptcy court further explained that "§ 522(d)(1) speaks of 'aggregate interest' in the property, and does not require that the debtor have title interest in the property." (*Id.* at 14–15.) The bankruptcy court also noted that the cases cited by the trustee and H & S were distinguishable and provided little guidance on the issue of whether debtor's interest in the property was sufficient to claim an exemption under § 522(d)(1). (*Id.*) Because the account receivable in the amount of $23,151.19 represented debtor's interest in real property used as her residence, the court denied the trustee and H & S's objections and permitted the exemption.

We have thoroughly reviewed the record on appeal, and are convinced that the bankruptcy court's legal conclusion concerning debtor's right to take the exemption of $15,000 under § 522(d)(1) is sound. We too find the language of the Final Judgment dispositive in that it clearly delineates the debtor's legal interest in the marital home in which she resided with her children. Moreover, the cases cited by H & S and the trustee are inapposite; they only discuss whether a mere possessory interest alone permits a debtor to claim an exemption under § 522(d)(1). Further, none of these cases involved situations where the debtor received an interest in the marital home as a result of equitable distribution effectuated by a court in a divorce proceeding. *See In re Johnson,* 184 B.R. 141, 142–43 (Bankr.D.Wyo.1995) (where debtor husband attempted to take non-debtor wife's homestead exemption, court found that debtor was not entitled to take non-filing wife's exemption because she did not own the property) (applying Wyoming law); *In re Gorski,* 85 B.R. 371, 372–73 (Bankr.E.D.Pa. 1988) (husband and wife filed for bankruptcy and intended to both claim a homestead exemption for each of their interests in marital home; bankruptcy court found that husband could not claim exemption under § 522(d)(1) for the marital home simply because he re-

---

**2.** Section 522(b)(1) in turn provides:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative paragraph (2) of this subsection.... Such property is ... (1)

property that is specified under subsection (d) of this section, unless the state law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize....

11 U.S.C. § 522(b)(1).

mained liable on the mortgage note where wife held sole title to the property); *In re Trotta*, 12 B.R. 843, 844 (Bankr.D.Conn.1981) (where husband and wife filed joint Chapter 13 plan, husband attempted to take homestead exemption so as to render debtors·insolvent; court found that husband's only interest was equitable in nature, i.e., under a theory of constructive or resulting trust, because wife held legal title in property, and that under property law, bona fide lienholder takes property free and clear of any such equitable claims). Here, however, the Final Judgment granted to debtor a one-third interest in the marital home, which the court determined was valued at $23,151.19. Accordingly, it is clear that debtor's interest in the house is a result of the Final Judgment. We therefore affirm the bankruptcy court's ruling which denied the trustee and H & S's objections to the exemption claimed by debtor.

## II. Statutory Attorney's Lien

The next issue on appeal is the nature of H & S's claim against debtor's estate. H & S argued in the bankruptcy court that it had a statutory charging lien (or attorney's lien) against the $23,151.19 account receivable, and that the lien was perfected at the time the Counterclaim was filed. *See* N.J. Stat. Ann. § 2A:13–5. H & S maintained that debtor obtained said amount (which represented her interest in the marital home) as a result of the work that H & S performed on debtor's behalf in connection with the underlying divorce proceeding. H & S thus argued that $23,151.00 of its $44,701.00 claim against debtor was in the nature of a secured claim, and the remaining amount, namely $21,550.00, was unsecured.

The bankruptcy court disagreed. The court found that under N.J. Stat. Ann. § 2A:13–5, H & S failed to perfect its attorney's lien as of the date that debtor filed her bankruptcy Petition. (Tr. of Hr'g dated 12/15/97 at 15.) Noting that the bankruptcy court was required to determine this issue by applying state law, it found that the attorney's lien was not perfected in accordance with New Jersey law, as H & S failed to commence an action to determine and/or enforce the lien in the underlying matrimonial proceeding. (*Id.*) From that premise, the bankruptcy court concluded that the entire amount debtor owed to H & S was a general unsecured claim.

The question presented by this aspect of the instant appeal is both novel and somewhat complex. The outcome of this issue depends upon our interpretation of relevant aspects of state law, namely New Jersey's "Attorney's Lien Act," N.J. Stat. Ann. § 2A:13–5, and case law interpreting that statute. *See Electronic Metal Prods. v. Bittman*, 916 F.2d 1502, 1504 (10th Cir.1990) ("The validity and extent of an attorney's lien in bankruptcy is determined by state law."). In order to decide if the bankruptcy court's ruling in this regard is sound, we must determine the point at which an attorney has a perfected attorney's lien under § 2A:13–5, and the related question of the procedure by which such perfection is effectuated.

The Attorney's Lien Act, ("the Act"), § 2A:13–5 states in pertinent part:

Lien for Services.

After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counselor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor and the proceeds thereof in whosesoever hands they may come. . . . The court in which the action or other proceeding is pending upon the petition of the attorney or counselor at law, may determine and enforce the lien.

N.J. Stat. Ann. § 2A:15–3. H & S argues that under the plain language of the statute, its attorney's lien was perfected as of the date that it commenced legal proceedings on debtor's behalf, which in this case was the date the Counterclaim was filed. Alternatively, H & S recognizes that under New Jersey law, an attorney is required to file a "Pre–Action Notice" under New Jersey

Court Rule 1:20A–6 prior to instituting an action to enforce an attorney's lien against a client.[3] Accordingly, H & S maintains that even if this Court finds that the Pre–Action Notice is a prerequisite to perfection under § 2A:13–5, it has satisfied this requirement, as it is undisputed that it served debtor with a letter indicating that it intended to bring an action to recover its attorney's fees just prior to the filing of the bankruptcy Petition.

The Supreme Court of New Jersey has not decided the point at which the statutory attorney's lien is perfected under § 2A:13–5. Without any authority from the New Jersey Supreme Court, our task is to predict how New Jersey's highest court would resolve this question. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990). "In making such predictions we recognize that the state's highest authority is the best authority on its own law and that if there be no decision by that Court then federal authorities must apply what they find to be the state law after giving proper regard to the relevant rulings of other courts of the state." *Id.* (quotations and citations omitted). Thus, it has been explained that "[o]ur role is not to form or create state law but to decide the case as we believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Id.* (citing *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 n. 5 (3d Cir.1977)).

Our analysis of the statute and relevant opinions from the lower courts of the state of New Jersey confirms that under § 2A:13–5, the right to assert an attorney's lien arises at the time of the commencement of the services by the attorney. At this point, the attorney's interest in the proceeds from the lawsuit is created. *See H & H Ranch Homes, Inc. v. Smith*, 54 N.J.Super. 347, 351, 148 A.2d 837, 841 (App.Div.1959)

(hereinafter "*H & H*"). However, creation of an interest in property is not synonymous with perfection of that interest. *See In re Burnham*, 12 B.R. 286, 290 (Bankr.N.D.Ga. 1981) (court's analysis treated the creation of lien and perfection of lien as two distinct events). In other words, the statute may require the attorney to perform some affirmative act or comply with some procedure to perfect the interest which is created under the statute. We have found this to be the case in other jurisdictions where similar attorney's lien statutes are in effect. *See Electronic Metal Prods., Inc. v. Bittman*, 916 F.2d 1502, 1504 (10th Cir.1990) (under Colorado attorney's lien statute, attorney must file notice of lien and failure to do so would make lien unperfected against third parties); *In re Del Grosso*, 111 B.R. 178, 182 (Bankr. N.D.Ill.1990) (noting that in order to perfect attorney's lien under Illinois law, attorney must: (1) serve notice in writing; (2) serve notice on the party against whom the client has the claim; and (3) serve notice of the lien during the existence of the attorney-client relationship; because service was not effectuated properly, court found no perfected attorney's lien); *cf. In re Albert*, 206 B.R. 636, 639 (Bankr.D.Mass.1997) (court found that attorney has inchoate lien on proceeds when attorney files action, and the lien becomes choate when judgment is entered in client's favor regardless of whether judgment is entered after bankruptcy commences; Massachusetts statute and case law interpreting attorney's lien statute did not require attorney to file notice or comply with any other procedural requirements); *In re 9 Stevens Cafe*, 161 B.R. 96, 98 (Bankr.S.D.N.Y.1993) (court held that under New York attorney's lien statute, (N.Y.Jud.L. § 475), attorney's lien takes effect at time bankruptcy case commences, and the fact that bankruptcy petition was filed prior to perfection of the

---

**3.** New Jersey Court Rule 1:20A–6, enacted in 1978, states:

Prior to the institution of an action to recover a fee, an attorney shall notice his client of the client's option to pursue the fee arbitration remedy as provided for by these rules. If the client does not elect to pursue the fee arbitration remedy, the attorney's complaint shall allege the giving of the notice required by this rule.

N.J. Ct. R. 1:20A–6. In recognition of the importance of this rule, the court in *Rosenfeld v. Rosenfeld*, 239 N.J.Super. 77, 78, 570 A.2d 1026 (Ch. Div.1989) held that an attorney seeking to impose an attorney's lien against proceeds received by a client under § 2A:13–5 must first serve a notice under this Rule, i.e., a Pre–Action Notice, prior to filing a Petition. Failure to do so, the court held, would bar any recovery under this statute. *Id.*

lien (i.e., the disbursement of the proceeds in underlying suit) did not effect lien's primacy in bankruptcy proceeding).[4]

If H & S's interpretation of § 2A:13–5 is correct, the required affirmative act (if any) would simply be the service of a Pre–Action Notice to the client, which occurred in this case prior to the filing of the Petition. However, if we agree with the legal conclusion reached by the bankruptcy court, we must hold that in order to perfect a lien under § 2A:13–5, the attorney is required not only to serve a Pre–Action Notice to the client, but also make an application to the court during the course of the main action for a determination of the attorney's right to an attorney's lien under § 2A:15–3. We conclude that the bankruptcy court's conclusion in this regard is sound.

In New Jersey, courts have set forth the procedure to be followed "where the determination or enforcement of an attorney's lien is sought." *See H & H Ranch Homes, Inc. v. Smith,* 54 N.J.Super. 347, 352–54, 148 A.2d 837 (App.Div.1959); *Rosenfeld v. Rosenfeld,* 239 N.J.Super. 77, 79, 570 A.2d 1026 (Ch.Div. 1989). That procedure has been outlined in several cases decided by the Appellate Division, but was first explained in *H & H.* There the Appellate Division stated:

> For the guidance of counsel ... consistent with the spirit of our present rules of practice, where the determination or enforcement of an attorney's lien is sought, ... [t]he attorney should make application to the court, *as a step in the proceeding of the main course,* by way of petition, which

shall set forth the facts upon which he relies to the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule of a further proceeding which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division, depending upon whether demand therefor has been made, ... or without a jury if the venue of the main cause is laid in the Chancery Division. In no event should the matter be tried as a summary proceeding.

*Id.* at 352–54, 148 A.2d at 837 (emphasis added). The court in *H & H* found that the attorney must file an application to the court "as a step in the proceeding in the main course" based upon the language of the last sentence of § 2A:13–5 which states that "[t]he court in which the primary action or proceeding is pending upon which an attorney or counselor at law claims a lien may, upon his Petition, determine and enforce the lien."[5] *See id.,* 148 A.2d at 837; *see also* N.J. Stat. Ann. § 2A:13–5.

Several Appellate Division opinions since *H & H* have followed its statement that the

---

4. We note that § 475 of the New York Judiciary Law contains similar language to that found in § 2A:13–5. Nonetheless, it is different in one significant respect. Section 475 provides in pertinent part:

> From the commencement of an action or special proceeding ... or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor and the proceeds thereof in whatever hands they may come.... *The Court upon petition of the client or attorney must determine and enforce the lien.*

N.Y. Jud. L. § 475 (emphasis added). In contrast, however, the last sentence of § 2A:13–5 provides that "[t]he Court *in which the action or other proceeding is pending* upon petition of the attorney or counselor at law, may determine and

enforce the lien." N.J. Stat. Ann. § 2A:13–5. It is this language which the Appellate Division in *H & H* interpreted in finding that the attorney must bring a petition "as a step in the main course." For a discussion of the court's holding in *H & H,* see *infra.* In light of the additional language found in 2A:13–5, it is of no consequence that courts have interpreted the New York statute differently.

5. We recognize that this language is subject to an alternative statutory interpretation. In *James v. Harris,* 42 N.J.Super. 468, 127 A.2d 215 (Law Div.1956), the estate of a deceased attorney sought to enforce an attorney's lien against settlement proceeds received by a former client in connection with a personal injury suit handled by the attorney on the former client's behalf. The defendant (client) argued that the estate's petition for an attorney's lien was untimely, as

attorney must file an application for the determination and enforcement of an attorney's lien during the pendency of the underlying proceeding, i.e., "as a step in the main course." *See Cole, Schotz, Bernstein v. Owens*, 292 N.J.Super. 453, 459, 679 A.2d 155 (App.Div.1996); *Mateo v. Mateo*, 281 N.J.Super. 73, 79, 656 A.2d 846 (App.Div.1995) ("Such a proceeding [for the enforcement and determination of an attorney's lien] must be brought in the main cause, but tried as a separate and distinct plenary action"; court found that attorney's lien was invalid because attorney filed Petition in the underlying lawsuit, but the trial court determined the issue by way of a summary proceeding without the attorney's issuance of a Pre–Action notice to the client); *Panarello v. Panarello*, 245 N.J.Super. 318, 320, 585 A.2d 428 (1990) ("NJSA § 2A:15–3 further provides that for a lien to be effective, it must be brought during the time the action or other proceeding is pending.").

■ We find that the logical import of these cases is that under § 2A:13–5, an attorney's right to assert an attorney's lien against any proceeds derived from that attorney's services comes into existence at the time the attorney commences services on behalf of that client by, for example, filing a complaint, counterclaim or other pleading. *See H & H*, 54 N.J.Super. at 351, 148 A.2d at 841. Nonetheless, under the case law cited above, the attorney will lose that right which the statute affords unless the procedures are properly followed. *See Cole, Schotz*, 292 N.J.Super. at 459, 679 A.2d at 155 (noting that attorney's lien was invalid where attorneys failed to file Pre–Action Notice). Those procedures include not only the requirement that the attorney provide a Pre–Action Notice to the client in compliance with New Jersey Court Rule 1:20A–6, but also that the attorney commence a Petition to enforce the inchoate right conferred by § 2A:13–5 during the pendency of the underlying proceeding.[6]

The courts in each of the Appellate Division cases cited above held that the attorneys were not entitled to a lien on the fruits of their efforts on behalf of their former clients because the procedures enunciated in *H & H* and later modified in *Rosenfeld* were in some manner not followed. *See id.; Mateo*, 281 N.J.Super. at 73, 656 A.2d 846 (attorney did

the estate could not commence an action to enforce an attorney's lien under § 2A:13–5 after a settlement was reached in the underlying case. *Id.* at 470, 127 A.2d at 216. The client relied upon the last sentence of § 2A:13–5, where it states that "[t]he court in which the action or other proceeding *is pending*, upon the petition of the attorney or counselor at law, may determine and enforce the lien." N.J. Stat. Ann. § 2A:13–5. The Law Division found the defendant's argument unpersuasive. In that regard, the court stated: "the statutory provision regarding the pendency of the action can be no more than a directive [that] the forum in which the action was instituted [is] the proper court in which to pursue the remedy." *James*, 42 N.J.Super. at 469, 127 A.2d at 217.

We note that the *James* court's interpretation of the phrase "[t]he Court in which the action or other proceeding is pending" is inconsistent with the *H & H* court's understanding of the meaning of that phrase. The *H & H* court's procedural framework for bringing a petition for an attorney's lien requires that the petition be made during pendency of the underlying proceeding. We are mindful of our overriding purpose in interpreting the meaning of this language in § 2A:13–5: "[o]ur role is not to form or create state law but to decide the case as we believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Robertson*, 914 F.2d at 378. Here, the

weight of authority has adopted the interpretation of the last sentence of § 2A:13–5 which is set forth in *H & H* and its progeny. Accordingly, we must give proper regard to what appears to be the modern, majority view on this issue. *See id.*

6. In *Rosenfeld*, the court recognized and applied the "procedural mechanism" set forth in *H & H*, and modified it to incorporate New Jersey Court Rule 1.20A–6, which requires an attorney to serve a Pre–Action Notice prior to instituting any proceeding to secure payment of attorney's fees. *Rosenfeld*, 239 N.J.Super. at 80, 570 A.2d at 1026; *see also* note 3 *supra*. We cannot adopt the alternative interpretation urged by H & S, which is that the Pre–Action Notice is the only affirmative action which the attorney must complete in order to perfect its attorney's lien under § 2A:13–5, as it is clear that the case law has treated the Pre–Action Notice and the timing of the filing of the Petition "in the main cause" as two equally important aspects of the singular "procedural framework" by which an attorney may seek enforcement of a lien under § 2A:13–5. *See, e.g., Rosenfeld*, 239 N.J.Super. at 80, 570 A.2d at 1026 (noting that *H & H* created a procedural framework which required the petition to be filed in the main cause, and that the mandate of Rule 1:20A–6 required modification of that framework); *see also Mateo*, 281 N.J.Super. at 79–80, 656 A.2d at 846 (applying the rules developed in *Rosenfeld* and *H & H*).

not file complaint in main action, but instead simply made a motion which was granted in a summary fashion); *Panarello*, 245 N.J.Super. at 323–24, 585 A.2d at 428 (denying law firm's post-judgment application for attorney's lien, stating "for lien to be effective it must be brought during the time the action or other proceeding is pending"; court also held that petition should be denied because "[t]here is no provision in this legislation to allow an attorney's lien to be asserted for post-judgment legal services"); *Rosenfeld*, 239 N.J.Super. at 80, 570 A.2d at 1026 (failure to serve Pre–Action Notice by client requires dismissal of attorney's Petition for attorney's lien). Accordingly, it follows that until those procedural requirements are satisfied, the right to an attorney's lien remains unperfected. Under similar circumstances to those presented here, other courts have found that the failure to file and/or effectuate proper service of a notice of an attorney's lien as required by the state statute rendered the lien unperfected. *See, e.g., Bittman*, 916 F.2d at 1504; *In re Del Grosso*, 111 B.R. at 182. In this regard, we find that the requirement of filing and/or service of a notice of the attorney's lien is analogous to the "procedural framework" developed by the Appellate Division in *H & H* and its progeny.

■ We are convinced that our conclusion concerning the effect of an attorney's failure to comply with procedures outlined in *H & H* and its progeny strikes the proper balance between the need to protect attorneys' rights to recoup unpaid fees (as is the purpose of § 2A:13–5) and the demonstrated importance which the courts have placed on compliance with Rule 1:20A–6 and the procedural framework developed in *H & H. See Cole, Schotz*, 292 N.J.Super. at 457, 679 A.2d at 155 (finding that purpose of Pre–Action Notice is to advise the client as to the client's right to request fee arbitration and the procedure therefor); *Mateo*, 281 N.J.Super. at 73, 656 A.2d at 846 (explaining that procedures outlined in *H & H* ensure that client is alerted to the fact that his or her attorney is seeking an adjudication of his rights); *see also Norrell v. Chasan*, 125 N.J.Eq. 230, 235, 4 A.2d 88, 90 (1939) (noting that right to collect on "charging lien" or "attorney's lien" "was designed to save the attorney's rights" where the lawyer was unable to otherwise collect

his fee). Accordingly, we predict that if the New Jersey Supreme Court were to address this issue, it would conclude that the failure of an attorney to commence an action for the determination and enforcement of an attorney's lien in the underlying proceeding renders that attorney's right to recoup the amounts recovered on the client's behalf unperfected.

■ We therefore agree with the bankruptcy court's analysis concerning the procedural requirements that an attorney must satisfy in order to perfect its statutory attorney's lien under New Jersey law. We perceive no legal error in the bankruptcy court's conclusion that in this case, the attorney's lien was not perfected as of the date the Petition was filed. While H & S maintains that it served a Pre–Action Notice upon debtor, it is undisputed that H & S did not file a Petition in the underlying matrimonial proceeding to determine or enforce its right to an attorney's lien on the $23,151.19 that the court found to be representative of debtor's interest in the marital home. Of course, the result of this analysis is that H & S's entire claim against debtor is in the nature of an unsecured claim. Accordingly, we affirm the bankruptcy court's ruling in all respects.