In re Arthur M. GALLAGHER, Debtor.

No. 01–18953–9P7.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Aug. 26, 2002.

Roger L. Waltemyer, Fort Myers, FL, for debtor.

Diane L. Jensen, Fort Myers, FL, Chapter 7 Trustee.

## ORDER SUSTAINING OBJECTION TO CLAIM NO. 13 FILED BY OWENS & WOLF, P.A.

ALEXANDER L. PASKAY, Chief Judge.

On January 30, 2002, Owens & Wolf, P.C. (Owens & Wolf) filed Claim No. 10 in this Chapter 7 liquidation case of Arthur M. Gallagher (Debtor). The Claim was filed as a secured claim in the original amount of $114,373.41. On February 26, 2002, Diane Jensen, the Chapter 7 Trustee in charge of the administration of the estate of the Debtor, filed an Objection to Claim No. 10. On March 29, 2002, this Court sustained the Trustee's Objection, disallowed Claim No. 10, and allowed Owens & Wolf to file an amended claim within 30 days of the entry of the Order.

In due course, Owens & Wolf filed an Amended Proof of Claim, Claim No. 13. On May 1, 2002, the Trustee renewed her Objection and challenged the allowance of Claim No. 13. This Claim is filed as a secured claim in the amount of $103,384.91. The Claim is accompanied by a "Certification of Attorney's Fees" and a "Summarize Slips by Activity." The Certification provides a narrative recitation of the services rendered. The "Summarize Slips by Activity" separates billable and non-billable hours and provides a general description of the services rendered by several attorneys of Owens & Wolf. According of the

Certificate, the hourly rates of its attorneys are as follows:

| | |
|---|---|
| F. Herbert Owens, III | at $225; |
| Joseph C. Weiss, who is "of counsel" with the firm | at $225; |
| Robert G. Feldman, an associate of the firm | at $125; |
| Deborah K. Lowe, a paralegal | at $ 75; |
| Carol M. Walker, a paralegal | at $ 75; |
| Cheryl Lynn Walters, a 3rd year law school student | at $ 75; and |
| Renee Beckham, a paralegal | at $ 75. |

It is conceded that the fee retainer agreement between the Debtor and Owens & Wolf is a contingency fee contract and provides for a 1/3 recovery to the law firm based on any recovery. *See* Addendum to Amended Proof of Claim, a copy of the fee retainer agreement. Nevertheless, the firm maintained hourly records of the services rendered in the event the firm was entitled to a recovery of attorneys' fees in addition to the compensatory damage award or possible punitive damage award. Based on the documentation submitted, Owens & Wolf has spent 367 hours on the services rendered to the Debtor. Based on the hourly rates described above, the total value of the services is $103,384.91, the amount of the claim under consideration. Owens & Wolf asserts that it has a secured claim pursuant to New Jersey Statute § 2A: 13–5 "Lien for Services."

In challenging the allowability of the Claim, the Trustee asserts the following: (1) the Claim of Owens & Wolf cannot be allowed as a secured claim because there is no evidence that the Owens & Wolf filed the necessary Pre–Action Notice required by New Jersey Court Rule 1:20A–6 to perfect its lien; (2) in any event, even if the Claim is allowed as a secured claim, the Claim should be limited to the 1/3 recovery contingency fee provided for by the fee retainer agreement; and (3) the schedule of the hourly rates attached to the Claim varies from the hourly rates requested in the proof of claim. For instance, several hours are billed for the

services of attorney Feldman at an hourly rate of $275 even though his hourly rate is $125 according to the Certificate. Finally, the Trustee contends that the submission lumps total hours without specifying the hours spent to a specific service performed by a specific attorney or paralegal.

■ Considering the Trustee's objections, seriatim, it is evident that the initial inquiry must be directed to the challenge of the secured status of the claim of Owens & Wolf. As noted above, the Trustee's challenge focuses on the contention that Owens & Wolf failed to file a Pre–Action Notice as required by Rule 1:20A–6, thus she asserts that the lien claim is unenforceable against the Trustee. And, as noted above, Owens & Wolf focuses on New Jersey Statute § 2A:13–5, in asserting that it has a valid charging lien. An analysis of both this Statute and Rule is necessary for this Court's determination of the issue at hand.

N.J. Stat. Ann. § 2A:13–5, titled "Lien for Services," provides as follows:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is

pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

N.J. Stat. Ann. § 2A: 13–5.

N.J. Ct. R. 1:20A–6 provides as follows:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-action notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. Pre-action notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client. . . The notice shall specifically advise the client of the right to request fee arbitration . . . The attorney's complaint shall allege the giving of notice required by this rule or it shall be dismissed.

Attorney's "special" or "charging" lien has mystified both bench and bar at least since its codification from the common law in the early part of the 19th Century by most States. The practical application of these statutes raises numerous questions and answers furnished by the courts, all of which lack the needed clarity, which is essential for a satisfactory resolution of the following questions. What does the statute provide? What must an attorney do and when must he do it to assure that his fees are protected? How do the modern rules of practice impact the procedures under the statute. And, what are the priorities between competing charging lien claims and other consensual or statutory liens?

In support of its secured status, Owens & Wolf cites three cases: (1) *In re Smith,* 263 B.R. 71 (Bankr.D.N.J.2001); (2) *Musikoff v. Jay Parrino's The Mint, L.L.C.,* 172 N.J. 133, 796 A.2d 866 (N.J.Sup.Ct.2002); and (3) *In the Matter of TLC of Lake Wales, Inc.,* 13 B.R. 593 (Bankr.M.D.Fla. 1981). In support of the challenge of the

secured status, the Trustee cites four cases: *Hoffman & Schreiber v. Medina*, 224 B.R. 556 (D.N.J.1998); *In re Tulsa Litho Co.*, 182 F.3d 933 (10th Cir.1999); *Martin v. Martin*, 335 N.J.Super. 212, 762 A.2d 246 (App.Div.2000); and *Musikoff, supra.* An analysis of these cases are necessary for this Court's ultimate determination of the secured or unsecured status of Claim No. 13.

The facts in the *Smith* case are analogous to the case at hand as they involve New Jersey law and are summarized as follow. Prior to her bankruptcy, Ms. Smith was involved in an automobile accident. She hired a law firm to file suit against the driver, which she ultimately recovered on the driver's policy limit. The law firm then filed suit against Ms. Smith's insurer, Allstate Indemnification Co. (Allstate). Ms. Smith was awarded $85,000 against Allstate. Allstate declined to pay the award and the law firm filed suit against Allstate. Ultimately, Allstate paid Ms. Smith the $85,000, of which the law firm received its contingency portion. *Smith*, 263 B.R. at 73–74.

During the pendency of that action, Ms. Smith filed, *pro se*, for Chapter 7 relief but never informed the law firm of her bankruptcy filing. The Chapter 7 trustee in *Smith* filed a four count complaint, alleging, *inter alia*, that the monies were property of the estate of Smith and had to be turned over to the estate. The law firm filed a counterclaim asserting that it had a charging lien against the proceeds of the Allstate litigation. *Smith*, 263 B.R. at 74–75. In seeking summary judgment against the law firm, the Chapter 7 trustee asserted that the law firm failed to perfect its charging lien pursuant to N.J. Ct. R. 1:20A–6, and therefore its claim should be allowed as a totally unsecured claim.

■ The bankruptcy court rejected the trustee's argument and ultimately conclud-

ed that the Rule did not deal with lien perfection at all and that it was merely designed to require an attorney to put the client on notice before an action was filed to enforce a charging lien. Under N.J. Stat. Ann. § 2A:13–5, an attorneys' lien is created at the time of the commencement of services in the case by the attorney. *Smith*, 263 B.R. at 80 *citing H & H Ranch Homes, Inc. v. Smith*, 54 N.J.Super. 347, 148 A.2d 837 (App.Div.1959). On the other hand, the pre-action notice, according to the *Smith* court, is a condition precedent to the commencement of an action to enforce the lien, a requirement as it relates to the enforcement and not to the perfection of the lien. *Smith*, 263 B.R. at 80.

The *Smith* court noted and disagreed with the district court's holding in *Hoffman & Schreiber, supra*, in which the district court affirmed the bankruptcy court's holding that the pre-action notice under N.J. Ct. R. 1:20A–6 must be filed in order to perfect the charging lien. The *Smith* court, in rejecting the holding in *Hoffman & Schreiber*, noted that the district court relied on cases where the state law unlike the law of New Jersey expressly required perfection. *Citing Electronic Metal Prods., Inc. v. Bittman*, 916 F.2d 1502, 1504 (10th Cir.1990)(applying Colorado law); *In re Del Grosso*, 111 B.R. 178, 182 (Bankr.N.D.Ill.1990)(applying Illinois law); *In re Burnham*, 12 B.R. 286, 290 (Bankr.N.D.Ga.1981)(applying Georgia law). *Smith*, 263 B.R. at 80. In summary, the *Smith* court held that the Statute creates the lien and found that neither the case law nor the statute itself provide that there is a requirement of perfection in creating the charging lien, while the Rule is the procedure to enforce the lien.

In *Hoffman & Schreiber, supra*, the district court noted that since the New Jersey Supreme Court had not decided the issue of at what point the statutory charging lien

is perfected under N.J. Stat. Ann. § 2A:13–5, it was the federal court's task to predict how New Jersey's highest court would resolve this question. *Hoffman & Schreiber*, 224 B.R. at 561. In affirming the bankruptcy court, the district court also relied on *H & H Ranch Homes, Inc.*, *supra* and *Rosenfeld v. Rosenfeld*, 239 N.J.Super. 77, 570 A.2d 1026 (Ch.Div. 1989).

In reviewing the bankruptcy court's decision, the district court in *Hoffman & Schreiber* stated that creation and perfection were not synonymous and in order to perfect the charging lien, an attorney was required to serve a Pre–Action Notice to the client and also make an application to the court during the course of the main action for a determination of the attorney's right to an attorney's lien under N.J. Stat. Ann. § 2A: 13–5. *Hoffman & Schreiber*, 224 B.R. at 562.

In reviewing several New Jersey cases, the district court then outlined the procedure to be followed "where the determination of the enforcement of the attorney's charging lien is sought," heavily relying on *H & H Ranch Homes, supra*. In *H & H Ranch Homes*, the court announced the guidelines for attorneys seeking to enforce a lien and stated that based upon the language of the last sentence of N.J. Stat. Ann. § 2A:13–5, the attorney must file an application to the court "as a step in the proceeding in the main course." *H & H Ranch Homes*, 148 A.2d at 837. Thereafter, several Appellate Division opinions since *H & H Ranch Homes* have likewise followed the statement that an attorney must file an application for the determination and enforcement of an attorney's lien during the pendency of the underlying proceeding. *See Cole, Schotz, Bernstein v. Owens*, 292 N.J.Super. 453, 459, 679 A.2d 155 (App.Div.1996); *Mateo v. Mateo*, 281 N.J.Super. 73, 79, 656 A.2d 846 (App.Div.

1995). In sum, the district court in *Hoffman & Schreiber* determined that an attorney in New Jersey would not be entitled to a lien on the fruits of their efforts on behalf of their former clients unless the procedures enunciated in *H & H Ranch Homes* were not followed.

■ This year, the New Jersey Supreme Court clarified the meaning of the last sentence in the N.J. Stat. Ann. § 2A:13–5, which *Hoffman & Schreiber* and *H & H Ranch Homes* relied on in formulating their opinions. In the case of *Musikoff, supra*, the New Jersey Supreme Court was called upon to answer a question of law certified and submitted by the United Sates Court of Appeals for the Third Circuit. This certified question was whether or not under New Jersey law, in order to enforce a lien under N.J. Stat. Ann. § 2A:13–5, an attorney must file a petition to acknowledge and enforce the lien prior to any settlement or final judgment in the underlying matter in which the attorney provided services giving rise to the lien. The New Jersey Supreme Court was asked to interpret the last sentence of N.J. Stat. Ann. § 2A:13–5 which provides "The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien." The Court concluded that the Statute does not require an attorney to file a petition to acknowledge and enforce an attorney's lien prior to settlement or judgment in the matter that has given rise to the lien itself. *Musikoff*, 796 A.2d at 870–71.

In sum, this Court is satisfied that the holding in *Smith* is more sound than the holding in *Hoffman & Schreiber*, especially in light of the recent decision by the New Jersey Supreme Court in *Musikoff* and therefore, this Court is inclined to follow the reasoning enunciated in *Smith*. The record reflects that Owens & Wolf was, at

all times, counsel of record for the Debtor, pre-petition with respect to the Quincy Mutual litigation. N.J. Stat. Ann. § 2A: 13–5 and case law interpreting this Statute clearly provide for the creation of a lien upon the commencement of the case. The record reflects that this was obviously done. As the *Smith* court noted, the pre-action notice is to provide the client with the opportunity to dispute the amount of the lien, specifically the attorneys' fees involved, not the creation of the same. And, for the most part, all cases interpreting this Statute and Rule usually involve a law firm that no longer represents the client, where notice of the lien and disputes arising regarding the attorney's fees expended on behalf of the former client are at issue. Although the Trustee ultimately settled the claim with respect to the Quincy Mutual litigation, there is no doubt that the Owens & Wolf firm expended services on behalf of the Debtor to achieve the settled outcome. In light of the fact that the Statute was enacted to ensure payment of attorneys' fees, this Court is satisfied that Owens & Wolf has a valid charging lien, and therefore, a secured claim against the proceeds of the Quincy Mutual litigation.

This leaves for consideration the proper amount of the allowable claim of Claim No. 13. As noted earlier, the Claim is filed in the total amount of $103,384.91 based on an hourly billing rate. The Addendum filed by Owens & Wolf, which attaches the fee retainer agreement, leaves no doubt that the law firm was retained on a contingency fee basis providing for a 1/3 fee based on the amount of recovery. As noted earlier, the Trustee settled all claims against Quincy Mutual for $104,342.91. Thus, based on the contingency fee contract, Claim No. 13 shall be allowed as a secured claim in the amount of $34,780.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim No. 13 be, and the same is hereby, overruled in part and sustained in part. It is further

ORDERED, ADJUDGED AND DE-CREED that Claim No. 13 filed by Owens & Wolf be, and the same is hereby, allowed as secured claim in the amount of $34,780.