THEODORE McCURDY MARSH et al., complainants-respondents,

*v.*

JOHN J. MURPHY, defendant-appellant.

[Argued October 23d, 1940.   Decided April 3d, 1941.]

*Mr. Fred Frieman* (*Mr. John A. Laird,* of counsel), for the appellant.

*Messrs. Child, Riker, Marsh & Shipman* (*Mr. Theodore McC. Marsh* and *Mr. Everett M. Scherer,* of counsel), for the respondents.

The opinion of the court was delivered by

PERSKIE, J.

This is a contest over the distribution of the sum of $1,750 now in the hands of the sheriff of Essex county. The defendant below, as judgment creditor of one John E. Anthes, Jr., and his wife, had caused execution to be issued and levy made on the fund. The complainants below were decreed to have a lien to the extent of $1,000 on the fund for services rendered as solicitors for the said John E. Anthes, Jr., his wife and his brother.

The facts which give rise to the contest are rather long and complicated. A general statement of these facts will suffice.

John E. Anthes, Jr., and his wife, owned all of the stock in their bus line, Elizabeth-Union-Hillside-Irvington Line, Inc., except one share owned by the brother of Anthes, Jr. They (hereafter referred to as vendors) sold their bus line to Salvatore LaSpada and Salvatore Italiano (hereafter referred to as buyers) for $35,000. Pursuant to the agreement of sale and purchase, the buyers made a down payment of $10,000 and agreed to pay the balance, in stated monthly payments, through one Richard H. Cashion, the designated trustee.

Cashion later interrupted his payments to the vendors and refused to continue them because several claims were made against the bus line by parties injured in an accident involving a bus formerly owned by the vendors for which claims the insurance carriers for the bus line had disclaimed liability under their policies; and because defendant—Murphy— recovered a judgment of "some nine thousand dollars odd" against Anthes, Jr., and his wife, and issued execution and levied upon the moneys due and to become due to the vendors.

In this posture of affairs, having parted with the bus line and being denied the balance of the purchase price—some thirteen thousand dollars—the vendors retained complainants, in writing, to represent their interest in the premises.

Pursuant to their employment, complainants filed a bill in Chancery for their clients. The insurance carriers for the bus line and a number of other parties amongst whom were LaSpada and Italiano, were made defendants. All defendants answered the bill. Thereafter, and before any hearing on the issues raised, the parties to the litigation composed their differences and the bill was dismissed.

We are fully in accord with the factual finding by the Vice-Chancellor that as a result of the compromise and the dismissal of the bill, the sum of about $13,000 theretofore unavailable to the vendors was made available to them.

Out of the proceeds thus made available, complainants received the sum of $1,400 on account of their fees for services rendered Anthes, Jr., and his wife, which fees they had reduced from the agreed amount of forty per cent. of the results of the litigation to the flat sum of $2,400.

From these same proceeds, defendant also received $5,750 in cash. Additionally, he received, by way of subrogation, two claims which either Anthes, Jr., or the bus line allegedly had. In consideration therefor, defendant executed a release of the levy which he had caused to be made against Anthes, Jr., and his wife. Thereafter, however, defendant again issued execution and caused a levy to be made on the unpaid balance still due from LaSpada, Italiano and Cashion, as trustee, to Anthes, Jr., and his wife.

On the return of a rule to show cause, Mr. Justice Parker granted defendant an order directing the bus line, LaSpada, Cashion, or any or either of them to pay to the sheriff of Essex county the sum of $1,600 ($1,750 in fact), in monthly payments of $150 each, which money the sheriff was directed to hold until the further order of the court. Additionally, complainants were given leave to file such proceedings as they deemed necessary and advisable to establish their lien or claim, if any.

In pursuance of the leave so granted, complainants filed the instant bill to impress a lien, to the extent of $1,000 on the sum of $1,750, in payment of the balance due them for the services which they had rendered their clients. Complainants' asserted lien was rested on three grounds; (1) on an equitable lien based on their retainer agreement, (2) on an oral assignment of part of the purchase price of the bus line to the extent of $2,400, and (3) on the provisions of R. S. 2:20-7. Complainants contended that their lien was, therefore, prior and paramount to the lien asserted by defendant as a judgment creditor.

Defendant set up three defenses to complainants' bill as supplemented; (1) complainants had no lien, (2) the bill stated no cause of action, and (3) that the court was without jurisdiction.

The Vice-Chancellor after hearing the case on the merits concluded that the defenses were without merit. He held that complainants were not only entitled to a lien by virtue of R. S. 2:20-7 but were also entitled to a lien as equitable assignees by virtue of general equitable principles. He further held that this lien related back to the filing of the bill by complainants for their clients and therefore had priority over defendant's judgment.

Accordingly, a decree, as advised, was entered directing the sheriff to pay complainants $1,000 with interest and costs and a counsel fee of $200 was allowed. The remainder of the $1,750 was ordered paid to defendant. Hence defendant appeals.

1. We concur in the result reached by the learned Vice-Chancellor. We do not, however, choose to rest our concurrence upon the theory that complainants' valid and binding contract with their clients gave them an equitable lien upon the proceeds of the suit when those proceeds took form. *Wilson v. Seeber, 72 N. J. Eq. 523; 66 Atl. Rep. 909.* Rather do we choose to base our concurrence upon the theory that complainants were entitled to have the lien which was decreed in their favor by virtue of the provisions of R. S. 2:20-7, which provisions we have recently had occasion to construe

and apply. *Norrell* v. *Chasan, 125 N. J. Eq. 230; 4 Atl. Rep. (2d) 88; 120 A. L. R. 1238.*

Under the provisions of this statute, here pertinent, a solicitor, after filing a bill of complaint or petition, "shall have a lien for compensation upon his client's cause of action, suit, claim or counter-claim which shall contain and attach to a verdict, report, decision, decree, award, judgment or final order in his client's favor, and the proceeds thereof in whose-soever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order of decree." *R. S. 2:20-7.*

Appellant argues that since the bill which complainants filed for their clients was dismissed, there is no "verdict, decision, decree, award, judgment or final order in their client's favor" to which the statutory lien could attach. This argument, in our opinion, completely ignores the law as it existed prior to the passage of the statute, the mischief it wrought, and the remedy supplied. Surely the legislature did not intend to discourage or thwart the amicable adjustment of differences between parties to litigation. Rather do we discern in the statute a legislative intent to protect an attorney, solicitor, or counsellor-at-law from the knavery of his client. Professional men, as complainants here, not unlike laborers, are worthy of their hire. To read the statute to mean that a verdict or decree, &c., is a *sine qua non* to the right of a lien for compensation for legal services rendered by a solicitor to his client is to make utterly meaningless the words of the statute, viz.: "The lien shall not be affected by any settlement between the parties before or after judgment or final order or decree." The case of *Shaffer* v. *Shaffer, 129 N. J. Eq. 42,* is clearly distinguishable. In that case, unlike in the instant case, there was "no proof that the complainant's action was well founded in fact." Nor was it "an action that was settled or discontinued." There the action "simply ceased to exist;" it "became void by the act of the parties, the husband and wife voluntarily resuming the normal state." Thus we held that the solicitors for complainant were not entitled to a lien under the act. *Shaffer* v. *Shaffer, supra*

(at *p. 46*). That holding is not at war with our holding in this case.

2. Nor were the proceedings fatally defective, as it is urged, because they were begun by bill instead of by petition. Clearly, the court had jurisdiction over the subject-matter and of the parties.

Passing over the question as to whether it was, as the Vice-Chancellor thought, better practice to begin by a bill rather than by a petition in a discontinued cause, to which defendant was not a party, and passing over the further question whether defendant has not waived the right presently to object to the procedure employed, by reason of his full participation in the cause on the merits, we think it may well be conceded that the proper procedure to impress a lien for services, as here, is by petition. *Cf. Artale* v. *Columbia Insurance Co., 109 N. J. Law 463, 468; 162 Atl. Rep. 585.*

Nor do the provisions of *R. S. 2:29-13* (which have for their source *P. L. 1915 ch. 116 p. 185*), operate to make a faulty pleading proper. *Grobholz* v. *Merdel Mortgage Investment Co., 115 N. J. Eq. 411, 423; 170 Atl. Rep. 815.* True they prohibit the dismissal of a suit or proceeding on the ground that it was erroneously begun by bill instead of by petition, or *vice versa,* but it is equally true that they expressly provide the method for the correction of a faulty pleading, viz.; "the court may order proper amendments to be made upon terms."

It may well be that, from the practical approach, there was no harm done in this particular case. For as the Vice-Chancellor points out the pleading set out a cause of action, all parties were properly in court and were heard on the merits of the issues raised. But we think the problem is more deeply rooted. Under our historic and distinctive system of the separate administration of equity jurisprudence, proper procedure may and very frequently does affect substantial rights of the parties in litigation and is not, therefore, lightly to be swept aside. Thus when, as here, the legislature has provided the method by which a faulty pleading may be corrected, that method should be followed. For nothing less

can satisfy the legislative provision. The pleading will be amended accordingly.

3. We have carefully considered all other points properly raised and argued and hold them to be without merit.

The decree, based on the pleadings as amended, is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.