

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-1995

# Industry Network v Armstrong

Precedential or Non-Precedential:

Docket 94-5132

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"Industry Network v Armstrong" (1995). *1995 Decisions.* Paper 108.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/108

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-5132 and 94-5164


THE INDUSTRY NETWORK SYSTEM, INC.

V.

ARMSTRONG WORLD INDUSTRIES, INC.

STEVEN M. KRAMER,
                              Appellant


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 84-03837)


Argued December 1, 1994

Before:  HUTCHINSON and NYGAARD, <u>Circuit Judges</u>
         and SEITZ, <u>Senior Circuit Judge</u>

(Opinion filed  April 25, 1995)


STEVEN M. KRAMER, ESQUIRE (Argued)
Steven M. Kramer & Associates
150 West 56th Street
65th Floor
New York, NY 10019
Attorney for Appellant

JAMES M. LEE, ESQUIRE (Argued)
Crummy, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102-5497
Attorney for Appellee
Industry Network System

KEVIN P. RODDY, ESQUIRE
Milberg, Weiss, Bershad, Hynes & Lerach
355 South Grand Avenue
Suite 4170
Los Angeles, CA 90071
Attorney for Appellee

Industry Network System

EDITH K. PAYNE, ESQUIRE
Stryker, Tams & Dill
Two Penn Plaza East
Newark, NJ 07105
Attorney for Appellee
Armstrong World Industries

MARTIN LONDON, ESQUIRE
CAMERON CLARK, ESQUIRE
JEH C. JOHNSON, ESQUIRE
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Attorney for Appellee
Armstrong World Industries

CARL A. SOLANO, ESQUIRE
ARLIN M. ADAMS, ESQUIRE (Argued)
Schnader, Harrison, Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103
Attorneys for Appellee
Armstrong World Industries

OPINION OF THE COURT

NYGAARD, <u>Circuit Judge</u>

Appellant Steven M. Kramer is an attorney who represented The Industry Network System, Inc. and Elliot Fineman in the underlying litigation, an antitrust case against Armstrong World Industries. After the first trial, in which his clients prevailed, Mr. Kramer ceased to represent both plaintiffs.[1] The

---

[1]. There is a dispute between Kramer and his former clients whether he was discharged or withdrew. The district court made no finding on this point, but the circumstances of how the relationship was severed are not significant to our decision.

issues that culminate in this appeal arise from the severance of that relationship. Kramer believes he is entitled to a lien to ensure that his fees will be paid and argues that the district court failed to recognize a lien. He appeals from three orders of the district court: the order dated January 21, 1994, compelling Kramer to turn over his files to the substituted counsel; the order dated February 8, 1994, denying reconsideration of its January 21st order; and the order dated February 25, 1994, denying Kramer's February 16, 1994 motion for an attorney's lien pursuant to New Jersey statutory law. These matters are now before us for review pursuant to the appellant's notice of appeal filed March 7, 1994.[2] Kramer represented himself in the district court and does so again before us. We will affirm.

Kramer sets forth three issues in his opening brief to this court: (1) whether the district court refused to recognize an attorney's lien, to which Kramer contends he is entitled for defending his client from counterclaims, and erred for holding him in contempt when he refused to surrender his files to substituted counsel; (2) whether the district court should have insisted that Kramer be paid before new counsel replaced him; and

_____

[2]. Kramer also filed another handwritten, nonetheless legible notice of appeal on March 30, 1994 in which he appealed "the orders of March 30, 1994, holding him in contempt, denying emergency stay, and the January 21st and February 25th orders, and the orders denying recusal and all related orders." Since he fails to pursue the stay order, it is abandoned. The balance of the issues in the handwritten "notice of appeal" are subsumed in the earlier notice of appeal.

(3) whether the district judge should be disqualified from hearing any matter concerning him.[3]  We note that, to the extent Kramer raised other issues in the text of his briefs to this court, but failed to first raise them in the  "Statement of Issues" section of his opening brief, those issues are waived. In Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993), we held that if an appellant lists an issue in his "Statement of Issues" and thereafter fails to pursue it in the "Argument" portion, we consider it abandoned.  Likewise, if he fails to raise an issue in his "Statement of Issues," but argues the point in the body of his brief, we will consider it waived.  See also Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir. 1989) (citing Fed. R. App. P. 28(a)(3) and (5), which require appellant's brief to contain a "statement of issues presented for review" and, in its argument, "the contentions of the appellant on the issues presented"); 16 Charles A. Wright, Federal Practice and Procedure § 3974, at 421 (1977 & Supp. 1994, at 690) (issues must be raised in both the "Issues" and the "Argument" sections of the brief); accord Kost v. Kozakiewicz, 1 F.3d 176, 182-83 & n.3 (3d Cir. 1992).

## I.

The underlying case was filed by Network and Elliot Fineman, Network's majority shareholder, against Armstrong,

---

[3].  We note that, to the extent Kramer argues issues in the text of his brief, other than those first raised in the "Statement of Issues," under the circumstances of this case, we will exercise our discretion to treat these matters as waived.  See Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) and Fed. R. App. P. 28(a)(3), (a)(6).

alleging antitrust, tortious interference and breach of contract claims. After a jury verdict in favor of plaintiffs, the district court granted Armstrong's motions for JNOV and for a new trial. Fineman v. Armstrong World Indus. Inc., 774 F.Supp. 225 (D.N.J. 1991). Fineman v. Armstrong World Indus., Inc., 980 F.2d 171 (3d Cir. 1992), cert. denied, 113 S. Ct. 1285 (1993). In the second trial, the jury awarded no damages to Network. This verdict has been appealed and is now pending before another panel of this court.

Kramer ceased to represent Fineman and Network between the first and second trials. Kramer refused, however, to turn his files over to Network's new attorneys. After Network sought an order compelling Kramer to relinquish the files, Kramer moved to recuse the trial judge, and, in a separate motion Kramer requested, inter alia, that, before he relinquish his files, Network be required to post a bond to guarantee payment for his services. The district court ordered Kramer to relinquish his files, allowed Network to substitute new counsel but did not require that Network post a bond or pay Kramer. Industry Network System, Inc. v. Armstrong World Indus., Inc., No. 84-3837 (D.N.J. Jan. 21, 1994) (unpublished order). Later, the district court denied Kramer's motion to recuse. Industry Network System, Inc. v. Armstrong World Indus., Inc., No. 84-3837 (D.N.J. Feb. 14, 1994) (unpublished opinion).

Kramer then filed a motion contending that he was entitled to a statutory attorney's lien for work done defending the plaintiffs from Armstrong's counterclaims. The district

court also denied this motion. <u>Industry Network System, Inc. v. Armstrong World Indus., Inc.</u>, No. 84–3837 (D.N.J. Feb. 25, 1994) (unpublished opinion). Following an order by the district court holding Kramer in contempt of its orders requiring him to relinquish his files, Kramer obeyed.

## II.

### A. Attorney's Lien

Kramer claims that defending Network against Armstrong's counterclaims entitles him to a fee and a lien to secure payment of it. He avers that all predicates to his claim are satisfied because his fee is not contingent upon Network's success in its antitrust case against Armstrong, and hence the jury's verdict for Network on the counterclaims, which was not contested on appeal, is for all purposes final. We conclude that the issue is ripe for review but is without factual or legal support. We will affirm.

The matters before us on appeal have been unduly complicated by appellant. His theory on why he is entitled to a fee and an attorney's lien, for example, has been evolving throughout the proceedings, from a <u>quantum meruit</u> request for $3.2 million in fees to compensate him for an alleged 8,000 hours of work; to a retaining lien for his defense to counterclaims;[4]

---

[4]. Kramer states in his brief that he spent "seven years of work in successfully defending the multi-million dollar counterclaims." He modified this contention downward at oral argument to "defending the $400,000 counter-claims." Neither estimate, however, is material to our decision except to note the labile nature of Kramer's contentions.

to a charging lien based upon the New Jersey Statutes Annotated (upon which he based the motion that the district court denied on February 25, 1994, which is one of the orders Kramer specified in his notice of appeal); to a fee based upon a bankruptcy order authorizing him to represent Fineman in bankruptcy; and at oral argument he contended for the first time that he is entitled to a lien under unspecified bankruptcy laws.  Throughout his arguments, Kramer seems to conflate the terms "fees" and "liens."  They are two different matters.  With respect to a lien, we have before us on appeal only whether the district court adequately protected Kramer's retaining lien or erred by denying him a statutory charging lien.

It is axiomatic, of course, that Kramer must show that he is or will become entitled to a fee before he is entitled to a lien.  When pressed by the court at oral argument for the fee agreement or other basis entitling him to a fee for defending the counterclaims, Kramer referred the court to Supplemental Appendix page 29.  This, as the court then pointed out, is only an order denying him a fee and deeming the district court's referral of jurisdiction with respect to fees withdrawn.  Nevertheless, Kramer then argued that by authorizing the debtor-in-possession Fineman to employ him as his antitrust attorney, the bankruptcy court created the obligation to pay him a fee.

There are several problems with Kramer's contentions.  First, Fineman, who was the debtor-in-possession, signed the Application only in his individual capacity, and any fee Kramer has earned is from the bankrupt estate for preserving its assets,

not from the parties to the underlying litigation.[5] Under the Bankruptcy Code, an attorney for a debtor-in-possession is entitled to be paid only in accordance with an agreement filed with the court. 11 U.S.C. § 328. But the Code does not entitle the attorney to a lien -- and for good reason. Section 503(b) of the Code allows reasonable compensation for an attorney as an administrative expense of the estate and § 507(a)(1) gives the expense priority. A lien, however, is neither authorized by the Code nor necessary.

Second, Kramer's argument is disingenuous at best and deceptive at worst. As debtor-in-possession, Fineman applied to the bankruptcy court with full knowledge of and assistance by Kramer, to have Kramer appointed "under the terms and conditions set forth in the annexed affidavit of proposed antitrust counsel." Kramer, in his "Affidavit of Proposed Special Counsel for Debtor-in-Possession," which he submitted with the Application to the Bankruptcy Court, averred,

> I have rendered to debtor professional services in
> connection with the within action and in accordance
> with a retainer agreement memorialized by letter
> attached hereto as Exhibit A...In connection with this
> retention I shall assist the Debtor-in-Possession in
> resolving all issues in the [underlying litigation] and

---

[5]. Fineman withdrew from the litigation after the first trial, and is no longer a party.

shall try the case to conclusion or settlement as is
necessary.

(emphasis added).  Moreover, Kramer concludes his affidavit,
I am unable to estimate the time for completion of
these services.  This case involves a prosecution of a
complex anti-trust case and inasmuch as my application
will be based on a contingency agreement set forth in
Exhibit A the amount of time necessary is not
applicable under these circumstances.

(emphasis added).[6]

Kramer contends that his right to a fee, hence his
right to a statutory lien, is for the "hours he spent."  Yet from
his own sworn words, his fee is "based upon the contingency
agreement set forth in Exhibit A."  This contingency agreement,
which is signed by both Kramer and Elliot Fineman individually,
provides that Kramer
shall receive 36% of any and all sums
recovered, whether by settlement or judgment.
Recovery shall be defined as all monies
recovered, including damages, treble damages,
and counsel fees paid by defendant pursuant
to statute.

In sum, Kramer agreed to represent the debtor-in-
possession on "all issues" for a fee that was contingent upon
Fineman's success in the antitrust case and not, as he has
argued, based upon a hourly sum for time spent or in quantum

---

[6].  In the Appendix Kramer filed on appeal, he supplied the court
with neither his Affidavit nor Elliot Fineman's Application.
Inasmuch as Kramer's entire argument on appeal, by his own
account, depends upon the bankruptcy court's order, it is
difficult for the court to view Kramer's act of omitting these
documents, so damaging to his argument and so critical to our
review and decision, as other than deliberate.

_meruit._ Because Fineman recovered nothing, and indeed did not participate in the second trial, the condition precedent to Kramer's right to a fee -- a verdict in the antitrust case in Fineman's favor -- has not occurred, and the entire basis of Kramer's counterclaim lien theory collapses. On this record he simply is not entitled to either a fee or a lien.

But Kramer is wrong in his other arguments as well. He relies upon our decision in _Novinger v. E.I. duPont de Nemours & Co., Inc._, 809 F.2d 212 (3d Cir.), _cert. denied_, 481 U.S. 1069 (1987), in which we held that the district court was required to affirmatively protect an attorney's retaining lien before requiring that he relinquish his files. His reliance, however, is misplaced because _Novinger_ was decided under Pennsylvania law.

Under New Jersey law, as in Pennsylvania an attorney will lose a retaining lien by voluntarily relinquishing files to substituted counsel. In New Jersey, however, an attorney will not lose the lien if the files are given to substituted counsel under compulsion of a court order. In _Frenkel v. Frenkel_, 599 A.2d 595 (N.J. Super. Ct. 1991), counsel for plaintiff likewise refused to give case files to substituted counsel until his fees were paid by plaintiff. The court held that a "conflict between the withdrawing attorney and the former client should not be allowed to delay the underlying action." _Id._ at 598. It concluded that a withdrawing attorney's common law retaining lien "[was] not relinquished" when it obeyed the court's order to turn them over. _Id.; accord Brauer v. Hotel Assoc., Inc._, 192 A.2d 831, 835 (N.J. 1963).

The situation is no different here. When Kramer was ordered by the court to relinquish his files, he had no choice but to do so. His retaining lien was and is protected, as the district court explicitly recognized. Industry Network, Inc., v. Armstrong, No. 84-3837, slip. op. at 10 (D.N.J. Jan. 21, 1994) (unpublished opinion):

> At issue today is not whether Mr. Kramer should voluntarily turn over the files, thereby destroying his retaining lien. Rather, the issue is whether the court should order Mr. Kramer to turn over the files involuntarily, a step which would preserve Mr Kramer's lien rights.

Kramer unnecessarily exposed himself to contempt by his disobedience, and without any foundation in the law he appealed the surrender order.

Kramer also incorrectly asserts that the district court erred by denying his February 16, 1994 motion in which he requested a statutory charging lien for the work done defending the counterclaims. First, the motion was entirely redundant because he was already protected by his common law retaining lien. But, more fundamentally, he relied in his motion upon N.J.S.A. § 2A:13-5, which provides:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or

> counterclaim or cross-claim, which shall
> contain and attach to a verdict, report,
> decision, award, judgment or final order in
> his client's favor, and the proceeds thereof
> in whosesoever hands they may come.

The district court held that this statute was limited on its face to attorneys who initiate claims and "confers no rights whatsoever upon an attorney in his capacity as the representative of a party successfully defending a claim of another party." Industry Network System, Inc. v. Armstrong World Indus., Inc., No. 84-3837, slip op. at 3 (D.N.J. Feb. 25, 1994) (unpublished opinion). We agree.

The plain language of N.J.S.A. § 2A:13-5 grants a lien to an attorney for affirmatively pursuing his client's "action, cause of action, claim or counterclaim or cross-claim." Rather than providing a lien for all services performed by an attorney, the state legislature took pains to list those specific services to which the lien applies, but it did not include the defense to a defendant's counterclaims. And Kramer has neither cited to us nor have we found any New Jersey case that interprets this statute otherwise. At least one case, however, recognizes the plain language of the statute as a barrier to the same argument that Kramer now makes. See Wilde v. Wilde, 184 A.2d 758 (N.J. Super. 1962) (questioning the propriety of defense counsel's claim that he should be entitled to a lien under § 2A:13-5 for successfully defending his client's title to property). We decline to contravene the plain language of the statute and read new rights into it.

For all of the foregoing reasons, the district court's order of January 21, 1994 and its order of February 8, 1994 denying reconsideration will be affirmed.

B. Substitution of Counsel

Kramer argues that New Jersey law required the district court to refuse substitution of new counsel for him in the underlying case until it required Network to pay him or to post a bond. This argument, too, is without support. Kramer relies only upon St. John the Baptist Greek Catholic Church v. Gengor, 2 A.2d 337, (N.J. Ch. 1938). He contends that the district court "simply ignored that authority." And that, "[h]ad it not done so, the orders in which appellant has been in contempt would never have been entered." (Appellant's brief p. 27).

There are a number of problems with Kramer's contentions here as well. First, as we have shown by his own sworn statement, he is not yet entitled to be paid a fee. Second, St. John does not support Kramer's position. Indeed, the court in St. John said specifically that "the petition for substitution will not be granted until the liens have been satisfied." Id. at 339 (emphasis added). When Kramer was before the district court his right to a fee was not ripe, nor is it now because the primary contingency has not yet happened. His retaining lien simply could not be satisfied when the district court ordered him to surrender his files because it could not

then be quantified.  Inasmuch as we have held that the district court properly denied Kramer's petition for the lien he requested under N.J.S.A. § 2A:13-5, this argument fails as well.

Finally, New Jersey law contradicts Kramer's argument. Under Frenkel, Kramer is protected by his retaining lien.  Hence, should a court at some time determine that Kramer is entitled to a fee, "there has not been a voluntary surrender of possession which would extinguish [his] common law retaining lien.  On the contrary, the lien is not relinquished." Id. at 598.  Kramer simply had no right to withhold the files as he did.  We conclude that the district court properly allowed substitution of counsel without ordering immediate payment of some arbitrary amount of fees or requiring that plaintiffs post bond.

## C. Recusal of Trial Judge

At oral argument Kramer limited his recusal request to matters dealing specifically with his right to fees.[7]  There is, however, no indication that Judge Bissell has any matter pertaining to Kramer's fee before him.  Therefore, Kramer's request that Judge Bissell recuse himself from hearing matters relating to fees is simply not ripe for review.  Should the conditions precedent to Kramer's fee occur, the matter would then still be in the first stage between him and his ex-client.  If

---

[7].  Kramer did not appeal from the district court's denial of his earlier motion for recusal, and we denied a petition by Kramer for a writ of mandamus to disqualify the trial judge from hearing any matter related to this case in which Kramer is involved. Industry Network System, Inc., v. Armstrong World Indus., Inc, No. 94-5183 (3d Cir. Apr. 22, 1994) (unpublished order).

his ex-client refuses to pay and Kramer believes he has a legitimate claim, he may opt to present the issue before a court. And to hypothesize further, if that issue should come before Judge Bissell; if Kramer still believes that Judge Bissell will not fairly adjudicate his claim and asks him to recuse; if Judge Bissell should refuse to recuse; and finally, if Kramer is dissatisfied with any fee order and elects to appeal that order, then he has an appealable order. But the record reflects nothing of the sort now. His appeal on this issue, as he has limited it, is premature.

### III.

In sum, the issues before us, reduced to their essence, are whether the district court failed to protect Kramer's retaining lien; erred by denying Kramer a charging lien under the N.J.S.A.; and, whether the trial judge erred by not recusing himself from matters involving Kramer's entitlement to a fee. Inasmuch as we have determined that Kramer's retaining lien is protected by New Jersey common law, and that on this record he is entitled neither to a fee nor a statutory charging lien, we will affirm the district court's orders of January 21, February 15 and 25, 1994, and its order holding him in contempt. We will dismiss the appeal to the extent it challenges the district court's refusal to recuse.