In re Bernea SMITH, Debtor.

Deborah Del Nobile Tannenbaum, Chapter 7 Trustee, Plaintiff,

v.

Bernea Smith, Friedman & Associates and Allstate Indemnity Company, Defendants.

Bankruptcy No. 98–56522 (KCF). Adversary No. 00–5042(TF).

United States Bankruptcy Court, D. New Jersey.

June 8, 2001.

---

Jay L. Lubetkin, Shoshana Schiff, Rabi-
nowitz, Trenk, Lubetkin & Tully, P.C.,
West Orange, New Jersey, for Deborah
Del Nobile Tannenbaum, Chapter 7 Trust-
ee.

William Oliver Jr., Asbury Park, New
Jersey, for debtor.

Suzanne C. Meola, King, Kitrick, Jack-
son & Troncone, Brick, New Jersey, for
Allstate Indemnity Co.

## *MEMORANDUM OPINION*

STEPHEN A. STRIPP, Bankruptcy
Judge.[1]

This is the court's decision on a motion
by plaintiff Deborah Del Nobile Tannen-
baum, the chapter 7 trustee for the bank-
ruptcy estate of Bernea Smith, for sum-
mary judgment on the counterclaim filed
by defendant Friedman & Associates
(hereinafter the "Friedman firm"), which
asserts a statutory and common law lien
on its attorney's file and in the proceeds of
settlement of a personal injury case. The
Friedman firm opposes the motion. The
court has jurisdiction pursuant to 28
U.S.C. §§ 1334(b), 151 and 157(a). This is
a core proceeding under 28 U.S.C.
§ 157(b)(2)(A), (E), (K) and (O). This
shall constitute the court's findings of fact
and conclusions of law.

## FINDINGS OF FACT

On June 22, 1995, debtor-defendant Ber-
nea Smith was involved in a motor vehicle
accident wherein she sustained personal
injuries. On August 1, 1995, Ms. Smith
retained the Friedman firm, which filed
suit against the driver who caused her
injuries. Ms. Smith recovered $15,000
from the other driver, which was the driv-

Paul J. Maselli, Maselli Warren, P.C.,
Princeton, New Jersey, for defendant
Friedman & Associates.

1. Although this case is assigned to the Hon.
Kathryn C. Ferguson, this motion was heard
and decided by Judge Stripp during Judge
Ferguson's temporary absence from the court.

er's liability insurance policy limit. The Friedman firm then filed a claim with Ms. Smith's insurer, Allstate Indemnification Co. ("Allstate"), pursuant to the underinsured motorist provision in her policy. That policy provided that all claims are subject to non-binding arbitration. To prepare for the arbitration, the Friedman firm conducted discovery, obtained medical records and expert reports, and prepared an arbitration statement in support of Ms. Smith's claim. On February 11, 1998, the claim was arbitrated, and the panel set Ms. Smith's damages at $225,000. However, Ms. Smith was only entitled to her policy limit of $100,000, less the $15,000 recovered from the adverse driver, which left her with an award of $85,000.

Allstate declined to pay the award. Thus, on May 5, 1998, the Friedman firm filed suit in the Superior Court of New Jersey against Allstate on behalf of Ms. Smith. After additional discovery and negotiations, a settlement was reached. On January 7, 1999, Allstate agreed to pay Ms. Smith $85,000, the remaining policy limit, in exchange for a release which dismissed the action. Upon receipt of the settlement funds, the Friedman firm disbursed approximately $56,000 to Ms. Smith and retained approximately $26,000, which represented the firm's contingency fee and costs.

On December 28, 1998, however, during the pendency of the state court action, Ms. Smith filed a *pro se* petition for relief under chapter 7 of title 11, United States Code (the Bankruptcy Code). Ms. Smith never informed the Friedman firm or the state court of her bankruptcy filing. Additionally, Ms. Smith failed to schedule the cause of action against Allstate in the relevant sections of her bankruptcy schedules and statement of affairs. As a result, the state court settlement, which occurred post-petition, was consummated without the required bankruptcy court approval.

Upon commencement of Ms. Smith's bankruptcy case, the trustee was appointed. In March 2000, the trustee discovered that the Friedman firm had represented Ms. Smith in connection with a workers compensation claim. For the next two months, the trustee attempted to obtain additional information from the Friedman firm concerning any other matters in which it represented Ms. Smith. Finally, in May 2000, the trustee issued a subpoena under Fed.R.Bankr.P.2004 to the Friedman firm for the turnover of any and all case files involving Ms. Smith. In response to the subpoena, the Friedman firm disclosed the existence of the Allstate settlement and turned over Ms. Smith's case file to the trustee.

Following the turnover, in June 2000, Ms. Smith amended her bankruptcy petition to reflect the state court action. At that time, Ms. Smith also claimed the settlement proceeds as exempt from the bankruptcy estate under Bankruptcy Code §§ 522(d)(11)(D) and (d)(11)(E). In response, on January 24, 2000, the trustee filed a four-count adversary complaint against Ms. Smith, the Friedman firm, and Allstate to: (1) avoid the settlement; (2) revoke Ms. Smith's discharge; (3) compel Ms. Smith and the Friedman firm to disgorge the settlement proceeds; and (4) object to Ms. Smith's exemption of the settlement proceeds from the bankruptcy estate.

On April 14, 2000, the trustee moved for partial summary judgment voiding the settlement between Ms. Smith and Allstate because it was not approved by this court pursuant to Fed.R.Bankr.Pro. 9019. That motion was granted on June 20, 2000. Additionally, the court ordered the Friedman firm to disgorge to Allstate its portion of the proceeds. On June 26, 2000, the

Friedman firm filed a counterclaim wherein it asserts a common law and statutory lien in the attorney file and proceeds of the settlement to the extent of the contingency fee due to the firm.

On October 3, 2000, the firm of Baer, Arbeiter, Ploshnick, Tanenbaum & Weiss ("Baer Arbeiter") was retained as special litigation counsel to the trustee and replaced the Friedman firm as attorney for the plaintiff in the case against Allstate. On October 30, 2000, the court approved a settlement between the trustee and Allstate in the amount of $85,000, which was the same amount that the Friedman firm had obtained from Allstate in the settlement voided by the trustee.

On February 9, 2001, the trustee filed the instant motion for summary judgment seeking the dismissal of the Friedman firm's counterclaim. Hearings were held before this court on March 12, 2001, and April 9, 2001, after which the court reserved decision.

## CONCLUSIONS OF LAW

### I.

A party seeking summary judgment bears the initial burden of demonstrating that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *see also In re Ricardo N. Uriarte*, 215 B.R. 669, 671 (Bankr.D.N.J.1997) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Where the moving party satisfies this burden, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. *Id.* at 672 (*citing Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). A court considering a motion for summary judgment does not resolve factual disputes but must view all facts and inferences therefrom in the light most favorable to the non-moving party. *Id.* (*citing Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1362, n. 1 (3d Cir.1996)). There is no genuine triable issue unless there is sufficient evidence to permit a finding in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S at 248, 106 S.Ct. at 2510).

### II.

#### *The Retaining Lien*

The trustee seeks summary judgment as to the Friedman firm's counterclaim which asserts in part a common law retaining lien in the attorney file and proceeds from the state court settlement. The issues regarding this lien are: (1) whether the Friedman firm has a common law retaining lien; (2) what effect, if any, the court's June 20, 2000 order voiding the state court settlement has on that lien; and (3) whether the Friedman firm's turnover of the file voided the lien.

The trustee argues that summary judgment is appropriate because the Friedman firm's retaining lien dissolved when the firm voluntarily relinquished Ms. Smith's case file in response to the subpoena issued by the trustee. The trustee cites the Friedman firm's failure to object to the subpoena as evidence of the voluntary nature of the turnover. Alternatively, the trustee argues that since the Friedman firm had been paid in full, no retaining lien could exist because there was nothing to which the lien could attach.

According to the Friedman firm, it has a retaining lien because it obtained possession of documents concerning Ms. Smith in

the course of the firm's representation of Ms. Smith.[2] Moreover, the Friedman firm asserts that it turned over the file to comply with Bankruptcy Code § 542, and that such a turnover does not constitute a voluntary relinquishment of the file. For these reasons, the Friedman firm contends that summary judgment is inappropriate, and asks the court to deny the motion.

It is settled that property interests are created and defined by state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). A lien is a property right, *see In re Pennsylvania Central Brewing Co.,* 135 F.2d 60, 63 (3d Cir.1943), and New Jersey law therefore governs the court's analysis of the Friedman firm's lien rights.

Under New Jersey law, an attorney has a common law retaining lien which "attaches to all papers, books, documents, securities, moneys, and property of the client which come into the possession of the attorney in the course of, and with reference to, his professional employment." *See Frenkel v. Frenkel,* 252 N.J.Super. 214, 217, 599 A.2d 595 (App. Div.1991) (*quoting Brauer v. Hotel Assoc., Inc.,* 40 N.J. 415, 419, 192 A.2d 831 (1963); *H. & H. Ranch Homes, Inc. v. Smith,* 54 N.J.Super. 347, 351–52, 148 A.2d 837 (App. Div.1959)). The retaining lien "gives an attorney the right to retain possession of the client's property until the entire balance due for legal services, as well as for costs and disbursements, is paid." *See id.* Voluntary relinquishment of a client's property, in the absence of a court order or reservation of rights, will terminate the

lien. *See id.* at 219, 599 A.2d 595; *see also Industry Network System v. Armstrong World Indus.,* 54 F.3d 150, 154 (3d Cir. 1995).

In the instant case, the facts demonstrate that the Friedman firm had a retaining lien, because it represented Ms. Smith, and in connection therewith, obtained possession of court papers, pleadings, medical records, expert reports, and other documents related to the litigation. The lien terminated on February 9, 1999 when the firm received payment in full for services rendered on behalf of Ms. Smith, because the fees which the lien secured were paid.

On January 20, 2000, however, the bankruptcy court voided the settlement *nunc pro tunc,* and ordered the Friedman firm to disgorge its share of the proceeds. The issue, therefore, is whether that order effectively reinstated the Friedman firm's retaining lien. According to the trustee, the retaining lien was not reinstated because: (1) the Friedman firm had been paid in full when the case settled; and (2) the Friedman firm voluntarily turned over the file which permanently voided the lien. The trustee's contentions here are without merit. As a result of the January 20, 2000 order, the Friedman firm's compensation was voided. The January 20, 2000 order returned the parties to their pre-settlement positions, at which time the Friedman firm had a valid retaining lien.

The third issue regarding the retaining lien is whether the Friedman firm lost the lien when it turned over Ms. Smith's file to the trustee. Under New

2. Rule 56(e) provides that facts offered in opposition to a motion for summary judgment shall be presented in affidavits, deposition transcripts and answers to interrogatories. An adverse party may not rest upon the mere allegations or denials of their pleadings. The Friedman firm submitted no such documents in opposition to the trustee's motion, and factual allegations in a brief do not comply with the requirements of Rule 56(e). Because, however, the facts which are material to this motion are not disputed, that omission does not affect the outcome of the motion.

Jersey law, voluntary relinquishment of client's property, in the absence of a court order or reservation of rights, will terminate a lien. *See Frenkel,* 252 N.J.Super. at 219, 599 A.2d 595; *see also Industry Network,* 54 F.3d at 154. In this case, the trustee argues that when a recipient of a subpoena turns over documents or a file without objecting to the subpoena, the turnover is voluntary and a retaining lien becomes void.

The trustee's position is incorrect. There is no requirement in any relevant statute, rule or case law for the recipient of a subpoena to object to the subpoena or to obtain a court order prior to the production of documents to prevent the conclusion that the turnover was voluntary. Moreover, compliance with a subpoena is not voluntary. Fed.R.Bankr.P. 2004(c) provides that "... the production of documentary evidence may be compelled in the manner provided in Rule 9016...." Fed. R.Bankr.P. 9016 incorporates Fed.R.Civ.P. 45, which states that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." *See* FED. R.CIV.P. 45(e); *see also* 10 COLLIER ON BANKRUPTCY, ¶ 9016.01 (Lawrence P. King, ed., 15th ed.2000). Therefore, because compliance with a subpoena is mandatory, the Friedman firm's turnover of the file did not void the retaining lien.

Rule 56(c) requires a party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. For the foregoing reasons, the court concludes that there is no genuine issue of material fact, but it is the Friedman firm, and not the trustee, which is entitled to judgment as a matter of law that it has a retaining lien in Ms. Smith's case file.

## III.

### *Avoidance of The Charging Lien Under Code § 545(2)*

Relying on Bankruptcy Code § 545(2), the trustee argues that the Friedman firm's attorney's charging lien is unperfected and unenforceable against a bona fide purchaser, and as such, may be avoided under the statute.

Bankruptcy Code § 545 is the authority for the trustee's avoidance of certain statutory liens. It states in pertinent part:

> [t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> . . .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property, whether or not such purchaser exists. . . .

*See* 11 U.S.C. § 545(2). In other words, if a statutory lien is not perfected or enforceable against a hypothetical bona fide purchaser who purchases the property as of the petition date, the lien may be avoided by the trustee. In order to do so, the trustee steps into the shoes of a hypothetical bona fide purchaser. *See United States v. Hunter (In re Walter),* 45 F.3d 1023, 1027 (6th Cir.1995). The trustee has no power, however, to avoid a statutory lien on property that could not have been lawfully conveyed at the time of the commencement of the case. *See In re Loretto Winery, Ltd.,* 898 F.2d 715, 724–25 (9th Cir.1990); *see also Swiss Bank Corp. v. Van Ness Assoc., Ltd. (In re Van Ness Assoc., Ltd.),* 173 B.R. 661, 668, n. 14 (Bankr.N.D.Ca.1994). Applicable state law determines whether the subject property can be conveyed lawfully, and thus, whether a lien is enforceable against a bona fide purchaser. *See In re Sullivan,*

254 B.R. 661, 668 (Bankr.D.N.J.2000) (*citing In re Loretto Winery*, 898 F.2d at 720).

■■■ The property at issue in this case is Ms. Smith's claim against Allstate. Pursuant to Bankruptcy Code § 541, that claim is property of Ms. Smith's bankruptcy estate. *See* 11 U.S.C. § 541; *see also Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir.1997) (Bankruptcy Code § 541 expressly includes causes of action as property interests included in the estate). Applicable New Jersey law, however, prohibits the assignment, and therefore the sale, of personal injury tort claims prior to judgment. *See Integrated Solutions*, 124 F.3d at 490 (*citing Village of Ridgewood v. Shell Oil Co.*, 289 N.J.Super. 181, 195, 673 A.2d 300 (App.Div.1996)). Thus, if the lawsuit was proceeding against the adverse driver, the trustee would not be able to avoid the Friedman firm's lien because a personal injury tort claim cannot be sold in New Jersey, and there could be no hypothetical bona fide purchaser of such claim for purposes of Bankruptcy Code § 545(2). *See In re Colombraro*, 230 B.R. 673, 676 (Bankr.D.N.J.1999) (*citing Weller v. Jersey City, H. & P.St. Ry. Co.*, 68 N.J.Eq. 659, 61 A. 459 (E. & A.1905) and *Goldfarb v. Reicher*, 112 N.J.L. 413, 171 A. 149 (1934)); *In re Fontaine*, 231 B.R. 1, 6 (Bankr.D.N.J.1999).

As previously noted, however, the debtor had settled her tort claim against the adverse driver before the petition was filed. The cause of action which was still pending was her claim against Allstate pursuant to the underinsured motorist provision in her own insurance policy. An indemnification claim is contractual in nature. *See George M. Brewster & Son v. Catalytic Constr. Co.*, 17 N.J. 20, 28, 109 A.2d 805 (1954); *Kimball Int'l, Inc. v. Northfield Metal Products*, 334 N.J.Super. 596, 613, 760 A.2d 794 (App.Div.2000).

That claim was therefore assignable under New Jersey law as of the petition date, and the trustee is a hypothetical bona fide purchaser for purposes of Code § 545(2).

## IV.

### *Perfection of an Attorney's Charging Lien*

The trustee argues that an attorney's charging lien must be perfected under New Jersey law, that the Friedman firm did not perfect its charging lien, and that the trustee can therefore avoid the lien under Bankruptcy Code § 545(2). N.J.S.A. 2A:13–5, entitled "lien for services," provides as follows:

> [a]fter the filing of a complaint ... the attorney or counsellor at law, who shall appear in the cause for the party instituting the action ... shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim ... which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

*See* N.J.S.A. 2A:13–5 (West 2001).

■■■ The attorney's lien under N.J.S.A. 2A:13–5 is created at the time of the commencement of services in the case by the attorney. *See H & H Ranch Homes, Inc. v. Smith*, 54 N.J.Super. 347, 352, 148 A.2d 837 (App.Div.1959). An attorney's charging lien relates back to the date the lien was created. *See Marsh v.*

*Murphy,* 129 N.J.Eq. 302, 305, 19 A.2d 197 (E. & A.1941) (holding that a charging lien under R.S. 2:20–7, now N.J.S.A. 2A:13–5, relates back to the filing of the complaint). Thus, since the Friedman firm commenced the action against Allstate before the debtor's bankruptcy petition was filed, the firm's charging lien was created prepetition and relates back to the date of the filing of the complaint.

▬ The trustee argues that the Friedman firm's charging lien had to be perfected by the filing of a pre-action notice under New Jersey Court Rule 1:20A–6, which requires service of a notice by an attorney upon a client prior to the filing of a complaint for attorney's fees. That Rule states:

> [n]o lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-action notice to a client; however, this shall not prevent a lawyer from instituting any ancillary legal action. Pre-action notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client ... The notice shall specifically advise the client of the right to request fee arbitration ... The attorney's complaint shall allege the giving of notice required by this rule or it shall be dismissed.

*See* R. 1:20A–6 (West 2000). That Rule, however, doesn't even mention an attorney's lien. The pre-action notice under that Rule advises the client as to the right to request fee arbitration and the procedure therefor. *See Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens,* 292 N.J.Super. 453, 458, 679 A.2d 155 (App.Div.1996). Although New Jersey case law requires service of a pre-action notice as a condition precedent to an action on an attorney's lien, *see id.,* that requirement relates to enforcement of the lien, not perfection of it. The *Cole, Schotz* case

and those on which it relies presumably adopted that judicial rule on the belief that before an attorney's lien can be enforced, there should be a determination as to whether there is a dispute about fees, because if no fees are due the issue of the lien is moot. The lien secures the fees. Perfection of a lien is, however, different from enforcement of a lien. Perfection relates to the validity of a lien as between the lienholder and another lienholder or a bona fide purchaser, whereas a lien can be enforced against the debtor who owns the subject property even if perfection was required but was not effected.

The trustee assumes that perfection of an attorney's lien is required, and argues that because the Friedman firm's lien was not perfected it is invalid as against the trustee. Not one New Jersey state court case, however, holds that an attorney's lien under N.J.S.A. 2A:13–5 must be perfected to be valid as against third parties. Neither does N.J.S.A. 2A:13–5 or any other New Jersey statute or rule require that an attorneys lien must be perfected. The same is true of certain other statutory liens. *See e.g.* N.J.S.A. 2A:44–36 (hospital, nursing home and physician's lien); N.J.S.A. 2A:44–21 (garage keeper's lien); *Regan v. Metropolitan Haulage Co.,* 127 N.J.Eq. 487, 14 A.2d 257 (Ch.1940) (garage keeper's lien does not have to be perfected). By contrast, where the New Jersey legislature has decided that a lien must be perfected, it has explicitly said so. *See e.g.* N.J.S.A. 12A:9–302 (requiring the filing of a financing statement to perfect certain security interests, but not others); *See also N.J.S.A.* 2A:44–6 (mechanic's lien must be filed within 90 days after completion of work).

The trustee relies on the case of *Hoffman & Schreiber v. Medina,* 224 B.R. 556 (D.N.J.1998), which held that a pre-action notice under R. 1:20A–6 must be filed pre-

petition to perfect an attorney's lien as against a bankruptcy trustee. This court respectfully disagrees with the decision in *Hoffman*. Since there is no "law of the district" in the Third Circuit, *see Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 (3d Cir.1991), this court is not bound by the decision in *Hoffman*.

First of all, as previously stated, no New Jersey statute or case states that an attorney's lien must be perfected in any manner. Secondly, the cases relied on by *Hoffman* at page 561 for the proposition that an attorney's lien must be perfected were cases in which state law explicitly requires such perfection. *See Electronic Metal Prods., Inc. v. Bittman*, 916 F.2d 1502, 1504 (10th Cir.1990) (holding that Colorado's attorney's lien statute requires filing of a notice of lien for perfection); *In re Del Grosso*, 111 B.R. 178, 182 (Bankr. N.D.Ill.1990) (holding that under Illinois law an attorney must serve notice of the lien for perfection); *In re Burnham*, 12 B.R. 286, 290 (Bankr.N.D.Ga.1981) (holding that the Georgia attorney's lien statute requires the filing of a lien claim for perfection). For these reasons, the court believes that *Hoffman* was incorrectly decided and declines to follow it.

It has been held in a number of cases under the Bankruptcy Code and the prior Bankruptcy Act that where state law does not specifically require perfection of an attorney's lien, it is valid against a bankruptcy trustee. *See In re Albert*, 206 B.R. 636, 640 n. 3 (Bankr.D.Mass.1997) (collecting cases). That rule applies in this case.

## V.

### *Bankruptcy Code § 546(b)*

█ Other cases have analyzed the issue of attorneys liens in light of Bankruptcy Code § 546(b), which states:

(1) the rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection

. . . .

The case of *In re Albert, supra,* dealt with Code § 546(b) and is factually similar to this case. In *Albert,* the attorney rendered services to the debtor as plaintiff in a case which was still pending when the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The attorney's services led to a postpetition judgment in favor of the debtor, but the trustee declined to retain the attorney as special counsel to enforce the judgment. The trustee then settled the judgment for cash. The attorney filed a motion to determine and enforce an attorney's lien under Massachusetts law, and the trustee objected. The trustee argued that the lien was not perfected because the judgment was entered postpetition. *Id.* at 638–39.

The court analyzed the issue under Bankruptcy Code § 546(b). The court noted that "[b]ankruptcy courts have held that where state law provides that the effective date of an attorney's lien relates back to the commencement of the attorney's services, § 546(b) protects the attorney's lien from being avoided by the trustee." *Albert,* 206 B.R. at 640 (collecting cases). Since an attorney's lien under Massachusetts law relates back to the commencement of services, the court held that the lien was valid against the trustee. *Id.* See also *In re 9 Stevens Cafe, Inc.,* 161 B.R. 96, 98 (Bankr.S.D.N.Y.1993) (holding that under New York law, there is no need to file or record an attorneys lien to perfect it, and the lien relates back to commencement of services). Thus, even

assuming that perfection of an attorney's lien is required under New Jersey law, such lien is nevertheless valid against the trustee under this line of cases interpreting Code § 546(b)(1)(A).

■ The trustee also argues that the Friedman firm's failure to file a proof of claim invalidates its lien. A proof of claim does not have to be filed, however, to preserve a secured claim *See Lee Servicing Co. v. Wolf, (In re Wolf),* 162 B.R. 98, 105 (Bankr.D.N.J.1993) (citing *Estate of Lellock v. Prudential Insurance Co. of America,* 811 F.2d 186, 189 (3d Cir.1987)); *See also In re Claremont Towers Co.,* 175 B.R. 157, 162 (Bankr.D.N.J.1994). That argument is therefore without merit.

## VI.

### *The Amount Due to the Friedman Firm*

It is beyond the scope of this decision to determine the amount due to the Friedman firm, as opposed to the validity of its lien. The court does note, however, that there is no reason why a pre-action notice should now be required under R. 1:20A–6 to determine the amount of the Friedman firm's claim.

The record does not reflect that the debtor took issue with the Friedman firm's services or fees. It was the trustee, as successor in interest to the debtor, who chose to replace the Friedman firm. The dispute as to the Friedman firm's lien arose postpetition, so the firm could not have filed a pre-action notice without violating the automatic stay of Bankruptcy Code § 362(a). The Friedman firm instead filed a counterclaim in response to the trustee's complaint to determine the attorney's lien, which was the proper procedure in this case. Moreover, the purpose of a pre-action notice under R. 1:20A–6 is to give the client notice of the right to fee arbitration. *See Cole, Schotz,* 292

N.J.Super. at 458, 679 A.2d 155. Unless the court wishes to relinquish jurisdiction to the state court to determine the amount due Friedman, a pre-action notice would serve no purpose in this case. Like the determination of liens, the allowance of claims is a core proceeding in a bankruptcy case. *See* 28 U.S.C. § 157(b)(2)(B) and (K). In addition, while property rights in bankruptcy are determined by state substantive law, *see Butner v. U.S., supra,* there is no requirement for a bankruptcy court to follow state procedural law. *See Citron Investment Corp. v. Emrich,* 493 F.2d 561 (9th Cir.1974); *In re Crest–Mex Corp.,* 223 B.R. 681 (Bankr.S.D.Tex.1998); *In re Edgewater Sun Spot, Inc.,* 154 B.R. 338 (Bankr.N.D.Fla.1993).

## VII.

### *The Trustee's Judgment*

The court also notes that the trustee's judgment appears questionable in this case. The case against Allstate was settled postpetition by the Friedman firm for $85,000., which was the limit of Allstate's liability under the policy. Because the settlement had not been approved by the bankruptcy court, it was void. The Friedman firm had not been informed of the bankruptcy case, however, when it settled with Allstate, because the debtor failed to inform the Friedman firm of the bankruptcy.

Instead of applying to this court for approval of the settlement *nunc pro tunc,* the trustee chose to void the settlement. In addition, instead of employing the Friedman firm as special counsel *nunc pro tunc,* the trustee chose instead to employ the Baer Arbiter firm, in which the trustee's husband is a member, to reopen the case against Allstate. Baer Arbiter then proceeded to immediately settle with Allstate on the identical terms which the

Friedman firm had negotiated. The Friedman firm had spent approximately four years prosecuting the debtor's claims against the adverse driver and Allstate, including discovery, expert reports, successful arbitration of the debtor's damages for purposes of the claim against Allstate at $225,000, suit against Allstate when it refused to accept the arbitration award, and then settlement with Allstate for the policy limit. On this record the court fails to see any difference in result between approving the original settlement and employing the Friedman firm *nunc pro tunc*, as the trustee could have done, and voiding the original settlement and employing Baer Arbiter, except for the trustee's attempt to deny the Friedman firm its fees and attorneys lien and cause those fees to go to Baer Arbiter, which the trustee employed on a contingent fee basis. Thus, the trustee apparently intended that the Friedman firm would receive none of the attorney's fee of approximately $26,000, which was the product of four years' work, and instead Baer Arbiter would receive that fee for several weeks' work reinstating the same settlement that the Friedman firm had negotiated. Because I am not familiar with everything which has occurred in this case, I must concede that this may have occurred for valid reasons which aren't part of the record on this motion. On this record, however, the result which the trustee intended to achieve here appears highly inequitable. The trustee's frustration regarding the Friedman firm's failure to turn over information regarding the debtor's cases without a subpoena strikes me as an insufficient justification for choosing not to seek approval of the debtor's settlement with Allstate and employment of the Friedman firm *nunc pro tunc*.

### CONCLUSION

The trustee's motion for summary judgment on the Friedman firm's counterclaim is denied, and judgment is entered determining that the Friedman firm's lien on the proceeds of the cause of action against Allstate is valid against the trustee. The amount due to the Friedman firm shall be determined by further proceedings. The attorney for the Friedman firm shall submit an order on notice under the five-day rule.